*In re* ESTATE OF BYRON P. SAVAGE, Deceased.—(ELAINE SAVAGE, Adm'r of the Estate of Byron P. Savage, Petitioner-Appellant, *v.* HAROLD L. GOLUB *et al.*, Respondents-Appellees.)

First District (1st Division)   No. 78-691

Opinion filed June 25, 1979.

Finkel & Fallmer, of Chicago (David M. Friedman, of counsel), for appellant.

Louis S. Elovitz, of Chicago (Rotman, Medansky & Elovitz, Ltd., of counsel), for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff-petitioner appeals from an order of the circuit court of Cook County denying her petition for recovery of property brought pursuant to section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 16—1). The sole issue presented on review is whether the interest of the decedent as a limited partner in Chicago Limousine Service, a limited partnership, terminated as of August 31, 1974. We affirm.

The factual background giving rise to this action is as follows:

The record discloses that Byron P. Savage (decedent) died intestate on August 16, 1974. On October 10, 1974, letters of administration were issued to his wife, Elaine Savage, the plaintiff herein. At the time of his death the decedent was a limited partner in Chicago Limousine Service, a limited partnership. This partnership was formed pursuant to an agreement dated January 1, 1972, entered into by decedent, Alvin M. Golub and Harold L. Golub as limited partners, and Chicago Courtesy Rental Company, an Illinois corporation, as the general partner. The agreement called for the limited partners to each receive 33% of the partnership's net profits with the remaining 1% to be distributed to the general partner.

The plaintiff filed a petition on August 3, 1976, in the probate division of the circuit court of Cook County to require Alvin M. Golub and Harold L. Golub, the respondents-defendants herein, to account for their acts and doings with regards to the operation and profits of the limited partnership from the date of the decedent's death. In their answer to the petition the defendants stated that they had accounted for their acts and doings up until the date of the decedent's death, including the last quarter in which said death occurred. The defendants went on to allege that no accounting was due the estate as to their actions subsequent to the quarter in which the decedent died. On October 27, 1976, the court ordered that the estate was entitled to an accounting for that period, but deferred the determination of the rights of the parties to a later date. However, the court did find that the surviving partners and the deceased did not enter into a "buy-sell" agreement in the business which they conducted as Chicago Limousine Service.

On November 28, 1977, the plaintiff filed the instant action in the form of a petition for recovery of property pursuant to section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 16—1). This petition was filed on behalf of the estate to recover 33% of the net profits earned by the Chicago Limousine Service from the date of the decedent's death to the time of the filing of the petition. In their answer, filed on December 14, 1977, the defendants denied the plaintiff's right to said profits alleging that the limited partnership agreement caused a

termination of the decedent's interest upon his death or, at the latest, at the end of the month in which he died. The defendants also argued that the estate would be unjustly enriched if it were permitted to recover these profits since the defendants devoted their efforts to the conduct of the business while the estate did not. After a hearing without a jury, the trial court entered an order on January 18, 1978, in favor of the defendants finding that the interest of the decedent as a limited partner in Chicago Limousine Service terminated on August 31, 1974, the last day of the month in which he died. It is from this order that the plaintiff appeals.

The plaintiff's sole argument on appeal is that the trial court erred in finding that the interest of the decedent terminated as of August 31, 1974. The plaintiff contends that paragraph 12 of the limited partnership agreement clearly indicates that the death of a limited partner would merely require the general partner to cause an accounting of the partnership's affairs and financial transactions up until the last day of the month in which the decedent's death occurred. We disagree with this contention.

Paragraph 12 provides in relevant part that:

"Upon the death of any partner, adjudicated incompetence or any other involuntary termination of this partnership status for any reason whatsoever at any time prior to the voluntary termination, an account of the affairs and financial transactions of the limited partnership shall be taken as of the last day of the month in which such event occurs."

The plaintiff suggests that the drafters of the agreement were, by implication, equating "death" with "any other involuntary termination of the partnership status." She asserts, that since the intent of the parties is unclear, one must necessarily look to the Uniform Limited Partnership Act (Ill. Rev. Stat. 1975, ch. 106½, par. 44 *et seq.*) to construe and interpret the terms of the agreement. In support of this assertion the plaintiff cites *Illinois Bankers Life Association v. Collins* (1930), 341 Ill. 548, 173 N.E. 465, in which the court specifically held that:

"Contracts are presumed to have been entered into in the light of existing principles of law, [citation] and the existing law is presumed to be a part of every contract, [citation] and contracts should be so understood and construed unless otherwise clearly indicated by the terms of the agreement. [Citation.]" (341 Ill. 548, 553.)

The plaintiff argues that any implication that the deceased partner's interest terminated upon his death is overcome by the relevant provisions of the Uniform Limited Partnership Act (Ill. Rev. Stat. 1975, ch. 106½, par. 44 *et seq.*). She asserts that sections 19 and 21 of said Act are applicable to this case and are to be read as though they were expressly incorporated

into the written agreement. See Ill. Rev. Stat. 1975, ch. 106½, par. 62(1), (2), (3), and (4), and par. 64(1) and (2).[1]

In construing specific contract provisions the overriding objective is to give effect to the intent of the parties involved. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.) To discover the intent of the contracting parties, the various provisions of a contract must be viewed as a whole. (*Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491.) The most reliable indicator of the parties' intent can be found in the language used in the contract. (*Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272; *Walsh v. State Farm Mutual Automobile Insurance Co.* (1968), 91 Ill. App. 2d 156, 234 N.E.2d 394.) "And in the absence of any ambiguity, contract language will be given its plain and ordinary meaning." *Body v. United Insurance Company of America* (1979), 72 Ill. App. 3d 594, 391 N.E.2d 19.

■■ ■ A court may not substitute a new or different contract for one which the parties did in fact make. (*Freeland v. Edwards* (1957), 11 Ill. 2d 395, 142 N.E.2d 701.) Furthermore, it is presumed that parties do not insert meaningless words and phrases into contracts. (*Valerio v. R & R Construction Co.* (1974), 20 Ill. App. 3d 48, 312 N.E.2d 713.) Consequently, no part of a contract may be rejected as meaningless or surplusage unless absolutely necessary. *Thomas Hoist Co. v. William J. Newman Co.* (1936), 365 Ill. 160, 6 N.E.2d 171; *Gross v. University of Chicago* (1973), 14 Ill. App. 3d 326, 302 N.E.2d 444.

■■ The plaintiff is correct in her assertion that a contract must be construed in light of existing principles of law and that these principles become a part of the contract unless the contract clearly provides otherwise. However, from our examination of the agreement in question it is clear that the express intent of the parties, manifested in paragraph 12,

---

[1] "§19. Assignment of limited partner's interest.
(1) A limited partner's interest is assignable.
(2) A substituted limited partner is a person admitted to all the rights of a limited partner who has died or has assigned his interest in a partnership.
(3) An assignee, who does not become a substituted limited partner, has no right to require any information or account of the partnership transactions or to inspect the partnership books; he is only entitled to receive the share of the profits or other compensation by way of income, or the return of his contribution, to which his assignor would otherwise be entitled.
(4) An assignee shall have the right to become a substituted limited partner if all the members (except the assignor) consent thereto or if the assignor, being thereunto empowered by the certificate, gives the assignee that right."
"§21. Death of a limited partner.
(1) On the death of a limited partner his executor or administrator shall have all the rights of a limited partner for the purpose of settling his estate, and such power as the deceased had to constitute his assignee a substituted limited partner.
(2) The estate of a deceased limited partner shall be liable for all his liabilities as a limited partner."

is that the interest of any party terminates upon his death and is to be calculated as of the last day of the month in which he died. There is no need to consider the possible "implications" of paragraph 12 since "upon the death of any partner" is clearly a specific example of an act constituting an involuntary termination of the partnership status "prior to a voluntary dissolution or other voluntary termination." Consequently, we need not rely upon sections 19 and 21 of the Uniform Limited Partnership Act (see Ill. Rev. Stat. 1975, ch. 106½, par. 62(1), (2), (3) and (4), and par. 64(1) and (2)), cited by the plaintiff, which contemplate the absence of the parties having expressed their will.

In her reply brief, the plaintiff contends that the defendant's interpretation of paragraph 12 would require us to find that the partnership dissolved upon the death of any limited partner. The plaintiff suggests that in accordance with the defendant's interpretation of the agreement section (c) of paragraph 12 of said agreement which begins:

"Upon termination or dissolution such assets or proceeds thereof shall be applied in the following order:"

necessarily refers back to the introductory section of paragraph 12 which begins:

"Upon the death of any partner, adjudicated incompetence or any other involuntary termination of this partnership status * * *"

A literal construction of paragraph 12 does not lead us to that conclusion. Furthermore, it is undisputed that the defendants continued to operate the partnership after the decedent's death. Finally, the trial court never held nor did the parties allege in the court below that the death of the decedent had caused a dissolution of the partnership.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.