**TEXAS CITY REFINING, INC., and the Travelers Insurance Companies, Appellants,**

v.

**UNIVERSAL OIL PRODUCTS CO., Appellee.**

**No. C14–83–816–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 29, 1984.

John T. Valentine, Houston, for appellants.

Lee L. Kaplan, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

MURPHY, Justice.

This is an appeal from a summary judgment granted to appellee, Universal Oil Products (UOP), based on the affirmative defense of release.

Appellant, Texas City Refining, Inc. (TCR), brought suit against appellee for damages resulting from an explosion of a Fluid Catalytic Cracking Unit (FCC unit). Appellant, Travelers Insurance Companies, joined, asserting its right of subrogation against appellee for monies paid to TCR as a result of the explosion. The FCC unit was purchased from appellee, who designed and installed the unit at Texas City Refining, Inc., pursuant to four (4) separate agreements: (1) UOP Fluid Catalytic Cracking Process License Agreement (License Agreement) (2) Engineering & Construction Agreement (3) Supplemental Agreement and (4) Guarantee Agreement. The License Agreement gave appellant, TCR, the right to use a process utilized by the FCC unit to crack certain compounds and obtain valuable chemicals. The right to use the process was subject to trade secret protection. Also, all four agreements contained a valid choice-of-law clause; thus, Illinois law governs the construction of those four agreements.

After the FCC unit began operation, several disputes arose concerning operations. As a result of these problems, negotiations were instituted which culminated in the execution of a Letter Agreement containing a mutual release in paragraph seven. The release paragraph states:

UOP and TCR hereby *fully and completely release and discharge each other* from any and all obligations, claims or causes of action, *whether alleged or not, which have arisen or may arise* out of or in connection with the design, construction, installation, performance and operation of the FCC Unit, or the Engineering and Construction Agreement or the Guarantee Agreement both dated May 1, 1972, between TCR and UOP and for all further claims *which have arisen or may arise in connection therewith.* (Emphasis added)

In addition the letter agreement contained paragraph eight stating:

It is understood and agreed that the FCC unit shall continue to be operated under, and subject to, the terms and conditions of the UOP Fluid Catalytic Cracking Process License Agreement ... between TCR and UOP.

Appellants contend in their first point of error the trial court erred in granting summary judgment due to the fact that UOP had not discharged its duties under the license agreement. Appellants argue the release was not complete since the Letter Agreement contains obligations of appellee that remain binding and, thus, granting of summary judgment was error.

■ The obligations that appellee had under the license agreement were to design the unit, furnish advisory services for construction of the unit and furnish operating engineers for start-up. However, the unit had been designed, constructed and started up *before* the Letter Agreement was executed. The only remaining obligations under the license agreement were appellant TCR's obligations to pay for and protect appellee's proprietary secrets. There is no conflict between the two paragraphs and

no duties remain for appellee to discharge under the license agreement. Appellants' first point of error is overruled.

In their second point of error, appellants contend the trial court erred in granting summary judgment because the Letter Agreement is ambiguous concerning the release of all future liabilities. Appellants argue that the initial paragraph of the Letter Agreement only addresses the resolution of all *outstanding* matters and problems, while the release paragraph refers to all liabilities, whether past, present or future. Thus, appellants contend, the limited scope of the first paragraph is not consistent with the "total release" language found in paragraph seven. We disagree.

■ We do not need to reach the decision as to whether Texas or Illinois law should be applied in construing the Letter Agreement because the result is the same under both. It is not disputed that the Letter Agreement is construed as a contract. As such, the question of whether the agreement is ambiguous is a question of law to be determined by the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex.1980); *Touhy v. Twentieth Century-Fox Film Corporation*, 69 Ill.App.3d 508, 26 Ill.Dec. 32, 387 N.E.2d 862 (1979). A writing is ambiguous only when there is a genuine uncertainty as to which one of two or more meanings is the proper one. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951); *Epstein v. Yoder*, 72 Ill.App.3d 966, 29 Ill.Dec. 169, 391 N.E.2d 432 (1979).

■ The primary concern of this court is to ascertain and give effect to the intentions of the parties as set forth in the instrument. To achieve this, the rule is to examine and consider the entire instrument so that none of the provisions are rendered meaningless. *R & P Enterprises*, 596 S.W.2d at 518–19; *Estate of Savage v. Golub*, 73 Ill.App.3d 656, 29 Ill.Dec. 706, 709, 392 N.E.2d 263, 266 (1979). When the pro-

visions of a contract are attacked on the grounds they contradict one another, they should be harmonized, if possible, to reflect the intentions of the parties. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330 (Tex.1983); *Epstein v. Yoder*, 29 Ill.Dec. at 175, 391 N.E.2d at 438. The court will not strike down any provision of a contract, unless there is an irreconcilable conflict. *Ogden*, 662 S.W.2d at 332.

■ A review of the two paragraphs that appellants contend are contradictory reveals instead that both paragraphs can be read in harmony with one another, resulting in one definite interpretation. It is clear that the parties entered into the agreement in order to resolve outstanding problems and as part of the agreement to resolve their disputes they agreed to a complete mutual release, which encompassed present and future claims. We are convinced that the Letter Agreement taken as a whole is an unambiguous instrument, and therefore point of error two is overruled.

■ In their third point of error, appellants contend that the trial court erred in granting summary judgment because appellee failed to provide summary judgment proof that it had satisfied all conditions precedent under the Letter Agreement. No conditions precedent are apparent in the Letter Agreement and both Texas and Illinois courts are hesitant to construe any paragraph or obligation as a condition precedent; rather the presumption is towards a covenant. *Schwarz-Jordan, Inc. v. Delisle Construction Co.*, 569 S.W.2d 878 (Tex.1978); *F.E. Holmes & Son Construction Co., Inc. v. Gualdoni Electric Service, Inc.*, 105 Ill.App.3d 1135, 61 Ill. Dec. 883, 435 N.E.2d 724 (1982). As stated in the very case that appellants rely on: "If a contract contains no conditions precedent, then, of course, a rule 54 allegation is unnecessary." *Texas International Airlines v. Wits Air Freight*, 608 S.W.2d 828 (Tex.Civ.App.—Dallas 1980, no writ). Thus, appellee did not have to plead per-

formance of conditions precedent and point of error three is overruled.

In order for this court to uphold a summary judgment, the moving party must demonstrate that as a matter of law there are no genuine issues of fact. *Wesson v. Jefferson Savings & Loan Association*, 641 S.W.2d 903 (Tex.1982). A review of the record convinces us that no genuine issue of material fact exists as to any point raised by appellant. Appellee is entitled to judgment as a matter of law, therefore the judgment of the trial court is affirmed.