**GROUP HOSPITAL SERVICES, INCORPORATED, Appellant,**

v.

**ONE AND TWO BROOKRIVER CENTER, Appellee.**

No. 05–84–00228–CV.

Court of Appeals of Texas, Dallas.

Jan. 14, 1986.

Rehearing Denied Feb. 26, 1986.

R. Brent Cooper, Dallas, for appellant.
Ernest E. Figari, Jr., Dallas, for appellee.

Before STEPHENS, WHITHAM and HOWELL, JJ.

HOWELL, Justice.

This is a contract dispute. One and Two Brookriver Center (Landlord) brought suit against Group Hospital Service, Inc. (Ten-

ant) for charges allegedly owed to Landlord under a lease agreement. Tenant counterclaimed asserting that Landlord had violated the Deceptive Trade Practices Act. TEX.BUS. & COM.CODE § 17.41 et seq. (Vernon Supp.1985). The trial court directed a verdict for Landlord on the counterclaim. Following a jury verdict, judgment went in favor of Landlord and Tenant now appeals on nineteen points. We affirm, modifying the trial court's judgment.

The parties entered into a lease agreement for space in an office tower in March, 1980. Three parts of the lease are significant to this dispute. The "operating cost provision" obligated Tenant to pay certain defined operating costs, including heating, cooling and utilities, that exceeded costs in the base year ("base costs"). Landlord was to furnish an advance estimate of operating costs at the beginning of each year. Any excess of estimated costs over base costs was to be added to the monthly rent. At the end of each year, the difference between estimated costs and actual costs would be reconciled.

The "air conditioning provision" required Landlord to provide air conditioning only during normal business hours. Tenant was entitled to request air conditioning at other hours at $50 per hour.

Finally, the "extraordinary electricity provision" allowed Landlord to charge for electrical charges deemed extraordinary by Landlord. Electrical current was to be supplied through meters. Tenant was obligated to pay for extraordinary electricity monthly.

As the facilities were being finished, representatives of the parties and the subcontractors held weekly meetings. At one meeting the electrical contractor informed Landlord and Tenant that separate meters for each item of Tenant's equipment would cost approximately $100,000. Neither party was willing to pay for the metering, and the subcontractor suggested that a single meter be employed. The jury found that the parties agreed that (1) Landlord would pay for a single meter, (2) Landlord would bill Tenant for all the electricity, and (3) Landlord would credit Tenant for the amount attributable to normal electrical usage. After the commencement of occupancy, Tenant refused to pay Landlord for after hours air conditioning charges, asserting that Landlord was "double billing" Tenant by charging both the flat $50 per hour fee and for "extraordinary electricity." Tenant claimed that part of the $50 hourly charge included the electricity needed to operate the air conditioning. Landlord argued that the air conditioning charge reflected replacement and maintenance costs and did not include electricity.

After some initial payments, Tenant also refused to pay the extraordinary electricity charges claiming that Landlord was in violation of the lease provision calling for separate metering equipment. It argued that any agreement between its representative and Landlord could not modify the terms of the lease because a lease clause forbids oral modifications and because the Statute of Frauds rendered the purported modification unenforceable. Tenant also disputed and refused to pay charges made under the "operating cost provision." Landlord filed this suit to collect the three categories of charges.

In its first point of error, Tenant complains that the trial court erred in directing a verdict for Landlord on the Deceptive Trade Practices Act counterclaim. Tenant alleged that Landlord had violated the provision forbidding a seller from "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." TEX.BUS. & COM. CODE ANN. § 17.46(b)(12) (Vernon Supp. 1985). Landlord is accused of falsely representing that it could: (1) bill for both extra air conditioning and the amount of extraordinary electricity attributable to air conditioning, (2) orally modify the lease, (3) bill for extraordinary electricity provided through a single meter.

Tenant's position is succinctly stated in its brief. "The case boiled down to controversy over what the lease meant." The suit involves nothing more than contract interpretation. Mere breach of con-

tract will not support a DTPA claim. *Dura-Wood Treating v. Century Forest Industries,* 675 F.2d 745, 756 (5th Cir. 1982); *Ashford Development v. USLife Real Estate Services,* 661 S.W.2d 933, 935 (Tex.1983); *Holloway v. Dannenmaier,* 581 S.W.2d 765, 767 (Tex.Civ.App.—Fort Worth 1979, writ dism'd). Tenant asks us to hold that a DTPA claim can be based upon erroneous interpretations of the contract. Cases allowing recovery under § 17.46(b)(12) uniformly predicate liability on *factual* rather than *interpretive* misrepresentations. *Royal Globe Insurance Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688 (Tex.1979) (agent falsely stated that insurance policy covered vandalism); *Leal v. Furniture Barn,* 571 S.W.2d 864 (Tex. 1978) (false representation of ability to forfeit funds paid in layaway plan); *George Pharis Chevrolet, Inc. v. Polk,* 661 S.W.2d 314 (Tex.App.—Houston [1st Dist.] 1983, no writ) (terms of written contract varied from party's oral agreement); *Wagner v. Morris,* 658 S.W.2d 230 (Tex.App.—Houston [1st Dist.] 1983, no writ) (vendor falsely represented that sale included growing crops). We are reluctant to "place a party under the onerous threat of treble damages should he seek to compel his adversary to perform according to the contract terms as agreed upon by the parties." *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983).

Tenant also argues that a verdict was improperly directed on its claim that Landlord's behavior was an unconscionable course of conduct. The DTPA defines unconscionable action as "an act or practice which, to a person's detriment ... results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration. TEX.BUS. & COM.CODE ANN. § 17.-45(5)(B) (Vernon Supp.1985).

■ Allegedly, the gross disparity stems from billing the Tenant for both extraordinary electricity and air conditioning. At most, Landlord's conduct increased the cost of after hours electricity by 100%. Standing alone, the charge for after hours electricity is a substantial sum, but in comparison to the entire transaction, the amount is small. We should guard against allowing every breach of contract claim to be elevated into a DTPA claim. We believe that a case must contain some element of overreaching or victimizing the unwary in order to create a DTPA claim. Both parties to this contract were responsible business people, well advised by counsel. Had the contract explicitly provided that Landlord could charge *both* $50 per hour for operating the air conditioning system after hours, plus the cost of the electricity consumed, Tenant could not have escaped its obligation by claiming DTPA unconscionability. It follows that Landlord did not act unconscionably in placing this interpretation on the contract. We are also of the opinion that any error was harmless in view of the fact that in response to other issues, the jury found in favor of Landlord's interpretation of the contract.

■ Points five through twelve attack the jury's findings regarding an agreement between the parties about billing for extraordinary electricity. The jury found that the parties agreed that Landlord would supply electricity through a single meter and that Tenant would pay monthly after the deduction of a credit for the base electrical use. The jury further found that Tenant had waived any claim that the oral agreement was unenforceable under the Statute of Frauds or a cluase in the lease forbidding oral modification. Finally, the jury found that Tenant's conduct had estopped it from asserting an unenforceability claim.

The points boil down to one central question. Is the oral agreement enforceable? We hold that it is.

We accept Landlord's contention that the agreement was not a true modification and thus not barred either by the lease or the Statute of Frauds. The excess electricity provision obligated Landlord to provide electricity through "meter devices." There was no specification of the number of devices, their location, or which party was to provide them. The oral agreement filled in these details. When it became apparent that separate metering equipment would be prohibitive, the parties opted for a single

meter and made provisions to ensure that Tenant would be charged monthly for its extraordinary electrical usage. Although a single meter did not fully meet the definition of the plural term "meters," appearing in the lease, as few as two meters would have done so. Tenant does not show how two meters would have been of any greater benefit to it than one single meter. We conclude that the oral agreement did not vary the lease terms, but only detailed how they would be implemented.

 Even if the agreement were viewed as a modification, it would be enforceable. Not every oral modification to a contract within the Statute of Frauds is barred. The critical determination is whether the modification *materially* effects the obligations in the underlying agreements. *Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir.1984); *Vendig v. Traylor*, 604 S.W.2d 424 (Tex.Civ.App.— Dallas 1980, writ ref'd n.r.e.). Where the character or value of the underlying agreement is unaltered, oral modifications are enforceable. *Garcia v. Karam*, 154 Tex. 240, 276 S.W.2d 255, 257 (1955).

 In the lease before us the underlying obligations are not disputed. Tenant's right of possession remains unchallenged; only the obligation of payment is in issue and the dispute only runs to a comparatively small segment of the overall obligation to pay. Landlord is to provide electricity through meter devices and Tenant is to pay for extraordinary usage. The agreement, at most, only changes the *number* of meters to be employed in computing the extraordinary electricity charge. The Statute of Frauds does not render this type of modification unenforceable. *Smith v. Hues*, 540 S.W.2d 485, 490–491 (Tex.Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

 The clause requiring modifications to the contract to be in writing likewise does not bar enforcement of the agreement. Parties to a contract may wiave the protection of a provision forbidding oral modifications. *Hyatt Cheek*

*Builders—Engineers Co. v. Board of Regents of the University of Texas System*, 607 S.W.2d 258, 265 (Tex.Civ.App.—Texarkana 1980, writ dism'd). The jury found that the parties had waived the writing requirement. The evidence indicates that Tenant received invoices consistent with the representatives' agreement. Tenant was aware that the invoices were arguably at variance with the terms of the lease but still chose to pay them. Adequate evidence supports the jury's finding of Tenant's knowing and intentional relinquishment of its rights under the oral modification clause.[1]

 Points thirteen through fifteen complain of the jury findings regarding the "operating cost provision." The jury was given a list of charges made pursuant to the provision for each year from 1981 to 1983 and was asked to determine whether each category of disputed charge was an operating expense within the meaning of the lease. It found that all of the disputed charges were operating costs for 1982 to 1983 but disallowed all disputed charges for 1981.

Tenant asserts that since the disputed charges are not expressly delineated in the lease (as other expenses are) the contract impliedly excludes then under the doctrine of *expressio unius est exclusio alterius.* The lease terms, however, are couched in broad categories. The disputed charges could well be subsets of these broad categories. The jury's finding to this effect is supported by sufficient evidence.

Tenant further contends that the trial court erred in granting judgment for the costs for 1982 and 1983 because of Landlord's failure to meet a condition precedent. The "operating costs provision" required Landlord to provide an annual advance estimate of taxes and costs for the ensuing calendar year. Tenant argues that, having failed to provide the estimate, Landlord cannot collect the operating expenses.

---

1. Having decided that waiver disposes of the oral modification clause, we need not consider

Tenant's points of error on the jury's estoppel finding.

■ Under Texas law, the court must determine whether a provision is a condition by examining the entire document. *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex.1983). Normally a condition is accompanied by certain identifying language. *Landscape Design and Construction Co. v. Harold Thomas Excavating, Inc.*, 604 S.W.2d 374, 377 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Courts prefer to construe a contract provision as a covenant rather than as a condition. *Texas City Refining, Inc. v. Universal Oil Products Co.*, 681 S.W.2d 303, 305 (Tex.App.—Houston [14th Dist.] 1984, no writ). Contracts are to be construed to avoid a forfeiture wherever possible *Schwarz-Jordan Inc. of Houston v. Delisle Const. Co.*, 569 S.W.2d 878 (Tex.1978).

■ Examination of the lease plainly reveals the estimate requirement not to be a condition of defeasance. It does not alter the underlying obligation to pay excess operating costs. At most, it affects the method by which the payment is assessed. To construe the estimate provision as a condition would result in a forfeiture. Having already provided the services, Landlord would be denied payment. We will avoid such a harsh construction.

Tenant further argues that the base year from which the excess costs are computed is 1982 as a matter of law. Consequently, Tenant argues, no charges under the "operating cost" provision could have been made until 1983. We find that Landlord presented sufficient evidence to support the jury finding that the base year was, in fact, 1980.

■ Point sixteen complains of the refusal to allow a trial amendment to allege that the base year under the lease was 1982. Trial amendments are within the sound discretion of the trial court. *Durham v. Uvalde Rock Asphalt Co.*, 599 S.W.2d 866, 869 (Tex.Civ.App.—San Antonio 1980, no writ). The record reflects that the allegedly new testimony did not adequately raise the base year argument. The trial court did not err in refusing to permit the amendment.

Tenant's seventeenth point urges that the trial court erred in granting partial summary judgment for certain charges undisputably part of the "operating cost provision." Tenant again raises the specter of double billing for electricity. The record reflects, however, that the partial summary judgment was carefully tailored to include only the undisputed charges. Tenant further claims that Landlord used incorrect billing procedures. The record adequately establishes the propriety of the procedures and no material fact issue is raised.

■ We do find merit in Tenant's second point of error that there was insufficient evidence to support the jury's finding that Tenant's DTPA claim was brought in bad faith. Section 17.50(c) of the act awards attorney's fees to the prevailing defendant in a DTPA suit where it is found that the claim was groundless and brought in bad faith or for harassment.

The party complaining under section 17.-50(c) has the burden to prove that a claim is in bad faith. *Dairyland County Mutual Ins. Co. v. Childress*, 650 S.W.2d 770, 774 (Tex.1983). The meaning of bad faith has never been precisely defined. One commentator has stated that a claimant under this section "will probably be required to prove that the consumer's claim was motivated by a malicious or discriminatory purpose." Lynn, *Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act*, 33 S.W.L.J. 941, 988 (1979). *See Brunstetter v. Southern*, 619 S.W.2d 557, 561 (Tex.Civ.App.—San Antonio 1981). The court in *Glasgow v. Hall* noted that bad faith has been defined: "a person so acting must have knowledge of such facts and circumstances to know that his or her actions are wrong and, with such knowledge, acts with intentional disregard of the rights of others." 668 S.W.2d 863, 865 (Tex.App.—Austin 1984, writ ref'd n.r. e.).

The evidence alleged to support the bad faith finding does not reflect Tenant's knowledge that its claims of double billing and legal misrepresentation were false.

Certainly no evidence points to a malicious intent on Tenant's part. Under either applicable definition, the requirements of bad faith are not met.

The judgment is modified to omit the award of attorney's fees to the appellee. As modified, the judgment is affirmed.

WHITHAM, J., concurs.

WHITHAM, Justice, concurring.

I concur in the result.