COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

AMERICAN GARMENT PROPERTIES,
INC.,  )

                                                                              )              
No.  08-03-00098-CV

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                 
34th District Court

CB RICHARD ELLIS-EL PASO,
L.L.C.,            )

                                                                              )            
of El Paso County, Texas

Appellee.                           )

                                                                              )                    (TC# 2002-209)

                                                                              )

 

 

O
P I N I O N

 

This appeal arises
from a suit to recover a real estate brokerage commission.  Appellee C.B. Richard Ellis-El Paso, L.L.C. (ACBRE-El Paso@)
sued Appellant American Garment Properties, Inc. (AAGP@), claiming that AGP had failed to pay
the full amount of its real estate commission pursuant to their Agency
Agreement and the Purchase Agreement. 
AGP asserted that the parties had orally modified their agreement to
reduce the commission.  CBRE-El Paso
moved for summary judgment as a matter of law and the trial court granted the
motion.  In its sole issue, AGP contends
the trial court erred in granting summary judgment because its summary judgment
evidence raised a fact issue that CBRE-El Paso orally agreed to reduce its
commission.  We affirm.

 








BACKGROUND

On August 1, 2000,
CBRE-EL Paso, a licensed real estate brokerage firm, and AGP entered into an Agency
Agreement, which gave CBRE-El Paso an exclusive right to sell AGP=s property at 10707 Gateway West for
twelve months.  Under the Agency
Agreement, AGP would pay CBRE-El Paso a 6 percent commission on the purchase
price if a procuring agent represented the purchaser.  The Agency Agreement contained a merger
clause, which provided that their agreement could only be modified by a Awriting signed by the parties.@

On May 30, 2001,
AGP and The Tom Hudson Co., a commercial real estate firm, entered into a
Purchase Agreement to purchase a 26.05-acre property, described as 10707 and
17027 Gateway West, El Paso, Texas.  The
purchase price was 4.9 million dollars. 
The Purchase Agreement provided for payment of a commission to CBRE-El
Paso and The Tom Hudson Co., in an amount equal to 6 percent of the purchase
price, to be divided equally between the brokers.  The Purchase Agreement contained a merger clause
and a clause prohibiting oral modification of the agreement.  The Tom Hudson Co. received a real estate
commission in the amount of $147,000, representing one-half of the total
brokerage fee due under the Purchase Agreement. 
AGP refused to pay CBRE-El Paso the same, alleging that the parties had
orally agreed to reduce CBRE-El Paso=s
commission.








In response to
CBRE-El Paso=s summary
judgment motion, AGP relied on three affidavits from:  (1) Moshe Azoulay, President of AGP; (2) C.
Thomas Hudson, President of The Tom Hudson Co.; and (3) Sylvia Borunda Firth,
General Counsel for AGP.  From this
summary judgment evidence, AGP established that in late September or early
October 2001, the buyer, Wal-Mart, requested that AGP grant up to an additional
three months= time to
extend the closing date.  Mr. Azoulay and
Michael White, CBRE-El Paso=s
principal, met on October 11, 2001 to discuss this request.  Mr. Azoulay was concerned because any
extension would involve incurring over $38,000 per month in fixed carrying
costs, including debt service, taxes, and insurance.  Mr. Azoulay initially requested that
Wal-Mart pay a non-refundable and non-applicable extension deposit of
$35,000.  Wal-Mart ultimately agreed to
pay $25,000 for each month of the closing date extension.  According to Mr. Azoulay, Mr. White on behalf
of CBRE-El Paso agreed that any commission to be paid would be reduced by
$13,500 per month for each month of the extension.  Mr. Azoulay attested that he could have
terminated the Purchase Agreement at that time, but because of the agreement
made with the buyer and CBRE-El Paso, the Purchase Agreement was amended on
October 12, 2001.

Mr. Hudson was not
involved in the discussions concerning reduction of the commission, but both
Mr. White and Mr. Azoulay called him concerning the matter.  He later received a copy of a memorandum from
Leighton Crutcher of AGP, dated October 25, 2001, and addressed to
Mr. White.  Mr. Azoulay attested
that he had directed a member of his staff to send a letter to Mr. White
to confirm their agreement regarding the reduction in commissions in exchange
for extending the Purchase Agreement. 
The memorandum states in pertinent part:

Per agreement of October 11, 2001, the
following items have been agreed to between Mr. Azoulay and Mr. White,
regarding real estate in the El Paso area:

 

As additional consideration for Mr.
Azoulay=s
agreement to extend the contract, dated June 12, 2001, by and between American
Garment Properties, Inc. and The Tom Hudson Co., Mr. White has agreed that the
commission payable to Mike White/CB Richard Ellis will be reduced by $13,500.00
for each month beyond this date that the sales contract for the Gateway
property has not closed.

 








Mr. Azoulay will >keep the door open= to Mr. White, without commitment to
buy or sell to [sic] real estate proposals which Mr. White may have.

 

Mr. Azoulay has requested that I make
note of the aforementioned items and place in Mr. White=s
file for future reference.

 

According to Mr.
Azoulay, in late 2001 or early 2002, as the sale was being finalized for
closing, Mr. White requested that AGP change the monthly commission reduction
from $13,500 to $9,000.  However, there
was no agreement reached to lower the $13,500 figure.  At the closing, CBRE-El Paso demanded the
full broker fee without any reduction. 
Mr. Hudson attested that prior to closing on January 8, 2002, Mr. White
called him and told him that he had met with Mr. Azoulay to discuss further
this transaction and the commission reduction requested by Mr. Azoulay and
outlined in Mr. Crutcher=s
memorandum.  Mr. White told him that he
proposed a $7,000 to $7,900 reduction for each month of the extension, not the
$13,500 figure described in the memorandum. 
Mr. Azoulay also called Mr. Hudson and advised him of Mr. White=s request to discuss a different sum
than the $13,500 figure stated in the memorandum.








On March 14, 2002,
Ms. Sylvia Borunda Firth wrote to the Texas Real Estate Commission to request a
legal opinion concerning a broker=s
failure to abide by an oral agreement with his client to contribute part of the
brokers=
commission to the client.  In its
response, the Commission stated that A[t]he
broker=s actions
could be construed as violating Section 15(a)(6)(V) of the Real Estate License
Act (Athe Act@), which authorizes disciplinary action
against a licensee for dishonesty, bad faith, or untrustworthiness.  The Commission would ordinarily expect a
licensee to abide by an agreement with a client to reduce the amount of a
commission, even if the agreement is not in writing.@  The Commission concluded that it would need
to investigate the matter before concluding that the broker violated the Act
and informed Ms. Firth how she or her client could file a complaint.

SUMMARY
JUDGMENT

Standard
of Review

In a traditional
motion for summary judgment, the movant has the burden of showing, with
competent proof, that no genuine issue of material fact exists, and that it is
entitled to judgment as a matter of law. 
See Tex.R.Civ.P.
166a(c); Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548‑49
(Tex. 1985); Duran v. Furr=s
Supermarkets, Inc., 921 S.W.2d 778, 784 (Tex.App.‑-El Paso 1996, writ
denied).  The purpose of summary judgment
is the elimination of patently unmeritorious claims or untenable defenses; it
is not intended to deprive litigants of their right to a full hearing on the
merits of any real issue of fact. Collins v. County of El Paso, 954
S.W.2d 137, 145 (Tex.App.--El Paso 1997, pet. denied), citing, Gulbenkian
v. Penn, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).  In determining whether there is a disputed
material fact issue precluding summary judgment, all evidence favorable to the 

non-movant will be taken as true;
every reasonable inference must be indulged in favor of the non‑movant
and any doubts resolved in its favor.  Nixon,
690 S.W.2d at 548‑49.

Statute
of Frauds

AGP asserts that
it raised a fact issue that CBRE-El Paso orally agreed to reduce its commission
by $13,500 for each month the closing was delayed.  AGP argues that 








CBRE-El Paso=s
oral agreement to reduce its commission was effective and therefore, the trial
court erred in granting summary judgment. 
Specifically, AGP contends that the statute of frauds formerly contained
in Section 20(b) of the Texas Real Estate License Act (ARELA@), does not prevent subsequent oral
modification of the parties=
agreement because the RELA only imposes the requirement that the agreement be
in writing upon the broker, but no such requirement on the public.  We disagree.

Here, the Purchase
Agreement between The Tom Hudson Co. and AGP provided that CBRE-El Paso would
receive a commission equal to 6 percent of the purchase, to be divided equally
between the brokers.  AGP concedes that
CBRE-El Paso was a third-party beneficiary of the Purchase Agreement.  See Callaway v. Overholt, 796 S.W.2d
828, 831-32 (Tex.App.--Austin 1990, pet. denied).  The Purchase Agreement states that A[t]his Agreement may only be amended or
terminated by an instrument in writing signed by both Seller and Buyer.@ 
A written contract not required by law to be in writing may be modified
by a subsequent oral agreement even though it provides that it can be modified
only by a written agreement.  Mar-Lan
Industries, Inc. v. Nelson, 635 S.W.2d 853, 855 (Tex.App.--El Paso 1982, no
writ).  Courts have allowed oral
modification in spite of the parties=
no oral modification clause, reasoning that the written agreement is of no
higher legal degree than an oral one, and either may vary or discharge the
other.  Id.; see also Lone Star
Steel Co. v. Scott, 759 S.W.2d 144, 153 (Tex.App.--Texarkana 1988, writ
denied); Group Hosp. Srvcs., Inc. v. One and Two Brookriver Center, 704
S.W.2d 886, 890 (Tex.App.--Dallas 1986, no writ); Hyatt Cheek Builders v.
Board of Regents of the Univ. of Texas System, 607 S.W.2d 258, 265
(Tex.Civ.App.--Texarkana 1980, writ dism=d).

AGP agrees that
the general rule in Texas is that an agreement that contains a 

no-oral-modification clause can be
orally modified if it is not subject to a statute of frauds.  The controlling issue in this case then is
whether the statute of frauds provision in the RELA, requiring real estate
commission agreements be in writing, bars AGP=s
oral modification defense.  The RELA
formerly provided: 








An action may not be brought in a court
in this state for recovery of a commission for the sale or purchase of real
estate unless the promise or agreement on which the action is brought, or some
memorandum thereof, is in writing and signed by the party to be charged or
signed by a person lawfully authorized by the party to sign it.[1]

 

The Texas Supreme Court has
interpreted this statutory provision as coming within the Statute of
Frauds.  Givens v. Dougherty, 671
S.W.2d 877, 878 (Tex. 1984).  In Denman
v. Hall, the Court noted that: 

The effect of this
statute is to require that contracts by which an agent is employed to buy or
sell real estate must be in writing; otherwise they are not enforceable.  Its purpose, like that of other sections of
the Statute of Frauds, is to prevent fraud arising from parol testimony as to
the terms and conditions of such contracts.

 

Denman v. Hall, 144 Tex. 633, 636, 193 S.W.2d 515,
516 (1946).

 

Under the Statute
of Frauds, a promise or agreement in a contract for the sale of real estate is
not enforceable unless the promise or agreement, or a memorandum of it, is in
writing and signed by the person to be charged with the promise or agreement or
by someone lawfully authorized to sign for him. 
See Tex.Bus.&Com.Code
Ann. '
26.01(a),(b)(4)(Vernon 2002).  








On appeal, AGP
contends that the plain language of statute of frauds provision in the RELA
demonstrates its limited application to only the broker.  AGP argues that the only prohibition is that Aan action may not be brought@ in a court of this state Afor the recovery of a commission@ for the sale or purchase of real
estate unless the promise or agreement is in writing and signed by the party to
be charged.  Therefore, the statute
imposes a requirement upon the broker to have a written agreement in order to
recover a commission, but imposes no such requirement upon the public from whom
the broker is attempting to recover.

We disagree with
AGP=s narrow reading of the statutory
provision for several reasons.  First,
the plain language does not expressly state that the written agreement
requirement to the parties=
transaction applies only to the broker. 
Rather, the RELA statutory provision, like other sections of the Statute
of Frauds, is primarily focused on the specific requirements of the parties= promise or agreement in the context of
real estate commissions.  Second, as a
general principle of contract law, A[w]here
a contract within the Statute of Frauds is not enforceable against the party to
be charged by an action against him, it is not enforceable by a set-off or
counterclaim in an action brought by him, or as a defense to a claim by him.@ 
Restatement (Second) of Contracts,
' 138 (1981).  Under AGP=s
interpretation of the statute, the parties could mutually agree to orally
modify their commission agreement, but CBRE-El Paso would nevertheless be
barred from bringing any action to recover under that modified agreement
because it would be an unenforceable agreement pursuant to the statute of
frauds provision.  To hold that the
commission agreement would be unenforceable against one of the parties, but not
the other, is at the very least untenable and would clearly be contrary to the
purpose of the RELA=s statute
of frauds provision, that is, to prevent fraud by imposing a requirement that
such agreements be in writing.  See
Denman, 144 Tex. at 636, 193 S.W.2d at 516.








Finally, the Texas
Supreme Court has not treated oral agreements to modify a real estate
commission agreement raised defensively by owners any differently from oral
agreements asserted by brokers seeking to recover their commissions.  See Givens, 671 S.W.2d at 878 (owner
claimed listing agreement had been mutually orally rescinded, but Texas law
does not allow mutual oral rescissions of contracts required to be in writing);
Denman, 144 Tex. at 638, 193 S.W.2d at 517 (owner claimed that agreement
was subject to an oral condition, but the alleged oral agreement was
inconsistent with and would nullify the express terms of the written
contract).  We conclude that the RELA
statute of frauds provision in effect at the time applies in this case and AGP=s summary judgment evidence concerning
oral modification of the Purchase Agreement did not preclude summary
judgment.  

AGP also contends
that there are additional reasons why the trial court erred in granting summary
judgment.  Specifically, AGP asserts that
it raised a fact issue on ratification because of Mr. White=s attempts to negotiate a lower
reduction amount and it raised a fact issue on AGP=s
reliance on CBRE-El Paso=s
agreement to reduce its commission when it agreed to a three-month extension of
the closing date.[2]








AGP=s contentions, however, do not raise
genuine issues of material fact in this case. 
As discussed above, the parties=
Purchase Agreement falls within the RELA=s
statute of frauds provision.  Not every
oral modification to a contract within the Statute of Frauds is barred.  Group Hosp. Srvcs, Inc., 704 S.W.2d at
890.  The critical determination is
whether the modification materially effects the obligations of the underlying
agreement.  Id.; see also
Dracopoulas v. Rachal, 411 S.W.2d 719, 721 (Tex. 1967)(exception to the
general rule against oral modifications of contracts permits the parties to
agree orally to extend the time of performance of a contract required to be in
writing, so long as the oral agreement is made before the expiration of the
written contract).  Where the character
or value of the underlying agreement is unaltered, oral modifications are
enforceable.  Group Hosp. Srvcs, Inc.,
704 S.W.2d at 890. The oral modification asserted in this case would materially
alter the parties= written
agreement, therefore AGP=s
summary judgment evidence related to that oral agreement did not raise genuine
issues of material fact that precluded summary judgment in CBRE-El Paso=s favor.  

Moreover, we find
that the record does not support any estoppel claim.  Estoppel does not arise unless the acts,
words, or conduct relied on to establish estoppel have mislead the other party
to his detriment, or have caused him to waive a right he had.  Reeves v. Hall, 437 S.W.2d 424, 428
(Tex.Civ.App.--Austin 1969, no writ). 
The conduct or words must have caused the other party to have acted in a
way different from the way he would have acted otherwise and to his
prejudice.  Id.  Accepting AGP=s
summary judgment evidence as true, we observe that Mr. Azoulay attested to
the following:

The Buyer [Wal-Mart] agreed to pay
$25,000.00 for each month of the extension, and Plaintiff [CBRE-El Paso] agreed
that any commission to be paid to it would be reduced $13,500.00 per month for
each month of the extension.  This arrangement
provided Owner [AGP] with coverage for its continuing carrying costs.  I could have terminated the Purchase Contract
at that time, which would have meant that Plaintiff would not have received any
commission.  Instead, because of the
agreement made with the Buyer and Plaintiff to cover Owner=s carrying costs, the Purchase Contract
was amended on October 12 to reflect the extension for a maximum period of
three months.

 

In his affidavit,
Mr. Azoulay simply states that he could have terminated the Purchase Agreement,
but instead, that agreement was amended to reflect the extension of the
closing date because of the agreement with Wal-Mart and CBRE-El Paso concerning
the carrying costs.  The summary judgment
evidence does not show that Mr. Azoulay was mislead to his detriment by CBRE-El
Paso nor does it show that he would have acted otherwise.  








As there are no
genuine issues of material fact and CBRE-El Paso is entitled to summary
judgment as a matter of law, we conclude the trial court did not err in
granting summary judgment in favor of CBRE-El Paso.  AGP=s
sole issue for review is overruled.

We affirm the
trial court=s
judgment.

 

 

 

October
28, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.











[1]
Acts of 1975, 64th Leg., R.S., ch. 216, '
20(b), 1975 Tex.Gen.Laws 533,
549, amended by Acts of 1997, 75th Leg., R.S., ch. 839, '
27, 1997 Tex.Gen.Laws 2695,
2709.  Repealed by Acts of 2001, 77th
Leg., R.S., ch. 1421, '
13, 2001 Tex.Gen.Laws 4570, 5020.





[2]
In addition, AGP argues that there was fact issues that would prevent recovery
under the original Agency Agreement. 
However, we do not reach this contention because we conclude that
CBRE-El Paso established its right to recover under the Purchase Agreement.