# NO. 12-15-00256-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SANGER BANK,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *DAVID FRANKENS AND*<br>*KATHRYN FRANKENS,*<br>*APPELLEES* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Sanger Bank appeals a temporary injunction enjoining it from proceeding with a foreclosure against 20.975 acres owned by David Christopher Frankens and Kathryn Frankens. In one issue, Sanger Bank contends the trial court abused its discretion in granting the temporary injunction because the Frankenses failed to show a probable right to relief in a cause of action against the Bank.[1] We affirm.

### BACKGROUND

David and Kathryn Frankens entered into a contract with David's mother, Bradina Benson, and her husband, Michael Benson, to build a two story, 3,800 square foot house on the Frankenses' 20.975 acres in Angelina County. The Frankenses obtained interim financing for the house through the Bensons' bank, Sanger Bank. As part of Sanger Bank's agreement to provide the interim financing, it agreed to provide a statement and copy of the draw request made by the Bensons on the same day that it disbursed funds to them.

---

[1] In its appellate brief, the Bank asserted a second issue contending that the temporary injunction violated rule of civil procedure 683. *See* TEX. R. CIV. P. 683. However, at oral argument, the Bank announced it was withdrawing this issue in its appeal.

Construction work began on the house on January 29, 2015. The Bank paid a draw request made by the Bensons for $7,250.00 for dirt work and cutting out the driveway. The Bank made this disbursement without sending a disbursement statement and copy of the draw request to the Frankenses as required by their contract. The evidence at the temporary injunction hearing showed that David had actually done this work.

By late March 2015, relations between the Frankenses and the Bensons had deteriorated. The Frankenses had concerns regarding the progress of the construction compared to the money drawn on the interim loan. Construction stopped by the end of March or early April. Initially, the Frankenses asked the Bensons to return and complete the home, but they did not return. Finally, on April 20, 2015, the Frankenses demanded the Bensons "resign" as the contractor on the house. The Bensons did no further work at the site but did not "resign" as the contractor.

As the months went by, nothing happened at the construction site. On July 31, 2015, the Frankenses filed suit against the Bensons in their individual capacities and against four entities the Bensons owned. Other defendants included Sanger Bank and Mandy Pullen, a vice president of mortgage lending for Sanger Bank. The Bank posted the 20.975 acres for a foreclosure sale, which was rescheduled for October 6, 2015. The Frankenses sought a temporary injunction to stop the foreclosure and maintain the status quo. On October 5, following a hearing at which all parties appeared, the trial court rendered a temporary injunction enjoining the Bank from foreclosing on the 20.975 acres until a final judgment is rendered in the proceeding. The Bank timely appealed.

### TEMPORARY INJUNCTION

The Bank contends in one issue that the trial court abused its discretion in granting the temporary injunction because the Frankenses failed to plead and prove a probable right to relief against the Bank.

### Standard of Review

The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam). A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). More specifically, the trial court does not abuse its discretion when it bases its decision on conflicting evidence, nor does it abuse its discretion so long as some evidence of substantive and probative character exists to support

2

its decision. ***Wright v. Sport Supply Grp., Inc***., 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no pet.); ***Grubaugh v. Tex. Emp'rs Ins. Ass'n***, 677 S.W.2d 812, 814 (Tex. App.—Fort Worth 1984, writ dism'd). An abuse of discretion arises when the trial court misapplies the law to the established facts of the case or when it concludes that the movant has demonstrated a probable injury or a probable right to recovery, and the conclusion is not reasonably supported by the evidence. ***Tri-Star Petroleum Co. v. Tipperary Corp.***, 101 S.W.3d 583, 587 (Tex. App.—El Paso 2003, pet. denied).

**<u>Applicable Law</u>**

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. ***Butnaru***, 84 S.W.3d at 204. In this context, the status quo is the last, actual, peaceable, noncontested status between the parties to the controversy that preceded the pending suit. *See **In re Newton***, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding).

To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. ***Butnaru***, 84 S.W.3d at 204. In the absence of special exceptions to the applicant's live pleading made at the time the trial court rules on the temporary injunction application, we construe the pleading liberally in the applicant's favor. ***Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.***, 394 S.W.3d 186, 196 (Tex. App.–Houston [1st Dist.] 2012, no pet.). A probable right to the relief sought is shown by alleging the cause of action and presenting evidence that tends to sustain it. ***Shor v. Pelican Oil & Gas Mgmt., LLC***, 405 S.W.3d 737, 749 (Tex. App.—Houston [1st Dist.] 2013, no pet.). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. ***Butnaru***, 84 S.W.3d at 204. A temporary injunction may be issued when a dispute involves real property because it is deemed legally "unique" and irreplaceable. *See **Sonwalkar***, 394 S.W.3d at 199.

The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. ***Schlumberger Ltd. v. Rutherford***, 472 S.W.3d 881, 892 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

**Analysis**

In their first amended original petition, which was the live pleading at the time of the trial court's hearing on the temporary injunction application, the Frankenses alleged that the Bank had breached its contract with them by "failing to provide plaintiffs with statements and draw requests as set out in the parties' agreement." The Bank does not dispute the existence of a valid contract between the parties. The Bank asserts, however, that it is not required to provide disbursement statements because "the Frankens [sic] first failed to perform their obligation under the Authorization by failing to open a Construction Loan Account with Sanger Bank." It argues that opening that account was a prerequisite to the Bank's becoming obligated to send notice pursuant to the contract.

The Frankenses signed a document titled "Lender's Disbursement Statement Authorization," which instructed the Bank regarding how they wanted construction advances disbursed. The document lists five options. The Frankenses indicated that they chose the first option, which provides that "[a]ll disbursements are to be made by deposit from Lender into an account maintained at Lender's office created by Borrower for the disbursement of construction advances with signing privileges according to the account agreement." However, Pullen testified that David asked for the draws to be placed in a Benson account and therefore, all draws were deposited directly into one of Bradina Benson's accounts, not an account created by the Frankenses. This could constitute an oral amendment to the Authorization. *See Am. Garment Props., Inc. v. CB Richard Ellis-El Paso, L.L.C.*, 155 S.W.3d 431, 435 (Tex. App.−El Paso 2004, no pet.) (held that a written contract not required by law to be in writing may be modified by a subsequent oral agreement). The choice to deposit the draws into the contractor's account coincides with the second option listed in the Authorization, which provides that "[a]ll disbursements are to be made payable solely to Contractor into an account established by the Contractor with approval from Borrower." Significantly, the Authorization further provides as follows:

> If Lender disburses pursuant to options 1 or 2 above, Lender shall obtain from the Contractor the signed periodic statement (draw request) that covers the funds for which the Contractor is requesting payment and provide to the Borrower a statement of funds disbursed (disbursement statement) by the Lender since the last statement was provided to the Borrower. The disbursement statement and copy of the draw request will be provided to Borrower on the same day that

4

Lender disburses to Contractor. Lender will provide said disbursement statement and draw request to Borrower.

Pullen admitted in her testimony at the temporary injunction hearing that the Bank had failed to provide the Frankenses with statements and draw requests as required by their contract. This could be determined an admission that the Bank had breached the contract. David testified that he had done the dirt work for which the $7,250.00 draw request made by the Bensons had been paid by the Bank. David and Kathryn both testified that if they had been notified by the Bank in a timely manner of this improper draw by the Bensons, they would not have suffered a $7,250.00 loss. This is some evidence of a breach of the contract by the Bank and resulting damages suffered by the Frankens that tends to establish a probable right to relief. *See Shor*, 495 S.W.3d at 749.

Contrary to the Bank's contention, the Frankenses presented evidence satisfying the second element required for the issuance of a temporary injunction. *See Butnaru*, 84 S.W.3d at 204. The trial court did not abuse its discretion when it maintained the status quo by enjoining foreclosure on the 20.975 acres owned by the Frankenses. *See Sonwalkar*, 394 S.W.3d at 199. We overrule the Bank's sole issue.

## DISPOSITION

Having overruled the Bank's sole issue, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 27, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

5



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 27, 2016**

**NO. 12-15-00256-CV**

**SANGER BANK,**
Appellant
V.
**DAVID FRANKENS AND KATHRYN FRANKENS,**
Appellees

Appeal from the 217th District Court
of Angelina County, Texas (Tr.Ct.No. CV-00502-15-07)

THIS CAUSE came to be heard on the oral arguments, appellate record, and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **SANGER BANK,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*