CDI ENGINEERING GROUP, INC., Appellant

v.

ADMINISTRATIVE EXCHANGE, INC., Appellee.

No. 14–05–00621–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 8, 2007.

Richard A. Illmer, Kurt Howard Kuhn, Virginia Katherine Hoelkscher, Austin, for Appellant.

Robert S. Harrell, William J. Boyce, Houston, for Appellee.

Panel consists of Justices FOWLER, SEYMORE and MIRABAL.*

## OPINION

CHARLES W. SEYMORE, Justice.

CDI Engineering Group, Inc. (CDI) appeals a judgment in favor of Administrative Exchange, Inc. (AEI) on the grounds that: (1) a letter memorializing an agreement between the parties is not an enforceable contract; (2) the trial court erred in submitting an incorrect question to the jury; (3) the evidence is legally and factually insufficient to support the jury's determination that all conditions precedent to the agreement were met; and (4) the evidence is legally and factually insufficient to support the jury's award of damages. Because we find the evidence legally insufficient to support the jury's finding that all conditions precedent to the agreement

---

* Senior Justice Margaret Garner Mirabal sitting by assignment.

were met, we reverse and render judgment that AEI take nothing.

## I. BACKGROUND

In early 2002, Lyondell Chemical Company and Equistar Chemicals, LP (Lyondell) proposed a vendor managed program to manage their temporary employees. Prior to the proposal of this program, Lyondell hired a large number of temporary employees through several different staffing companies. The purpose of the program, the genesis of which arose after the tragedy of September 11, 2001, precipitating Lyondell's concern with background checks, was to consolidate the hiring of temporary employees with one company that could oversee any necessary subcontractors. Lyondell solicited bids from a number of temporary staffing companies to act as a general contractor for the program. Lyondell sought a staffing company that could provide both technical and nontechnical employees.[1] Both CDI and AEI submitted proposals. CDI had experience primarily providing technical employees; AEI specialized in nontechnical employees. Lyondell rejected AEI's proposal because AEI is a regional, not a nationally based, company; CDI, which has a national presence, was included as one of four semi-finalists for the vendor managed program. Lyondell informed CDI that for CDI to win the contract it needed to team with a firm that provided nontechnical employees.

In March 2002, Philip Luna, vice president of CDI, contacted Dick Darroh, president of AEI, to discuss working together to win the Lyondell contract. The parties agreed that AEI would supply nontechnical employees to CDI for the purpose of obtaining the Lyondell vendor managed program. On April 1, 2002, the parties memorialized their agreement in a letter, with the following language pertinent to our inquiry:

> This letter will serve to confirm CDI Engineering Group's (CDI) intent to respond to Lyondell Chemical Company and Equistar Chemicals, LP, RFP No.2002–04. CDI would like to team with Administrative Exchange, Inc. (AEI) for the bidding and execution of this Managed System for Technical and Clerical Staff Augmentation Program.

> \* \* \* \* \*

> CDI agrees to utilize AEI as exclusive supplier for those positions described as clerical and administrative non-professional and those described as human resources, accounting, laboratory, legal, tax and treasury. CDI will be responsible for the remaining technical and professional positions, and will utilize AEI as a preferred supplier for these positions as needed.

As part of the bidding process, on May 20, 2002, Lyondell met with CDI to discuss CDI's proposal. At that time, Dave Gordon, director of corporate staffing for Lyondell, informed CDI that Lyondell viewed AEI as an obstacle to CDI's bid. Lyondell employees informed CDI that they would permit AEI to manage the nontechnical positions in the contract as a subcontractor under CDI. Lyondell and CDI subsequently entered into a detailed contract under which CDI would manage all of Lyondell's temporary employees. The contract expressly approved AEI, CDI Professional Services, and Today's Staffing as subcontractors for CDI. There

---

1. Technical positions included construction coordinators, project planners, drafters, project managers, engineers, designers, and engineering coordinators. Nontechnical positions included accounting, paralegals, auditors, general office clerks, administrative assistants and mail room clerks.

was no clear provision in the contract that AEI would be the exclusive supplier and supervisor of nontechnical employees.

In August 2002, AEI learned that CDI was using other staffing companies to provide nontechnical employees to Lyondell. At a meeting on August 22, 2002, a representative of CDI told AEI that it would not be permitted to manage other nontechnical vendors. Moreover, AEI was informed that CDI intended to retain the forty current AEI employees and would recruit additional nontechnical employees from other staffing companies. AEI rejected CDI's proposal as contravening the April 1, 2002 agreement. CDI responded that the agreement was contingent on Lyondell's approval of AEI as an exclusive supplier. CDI contended that it was not bound by the agreement because Lyondell did not approve AEI as the exclusive supplier of nontechnical services. AEI subsequently sued CDI for breach of the April 1, 2002 agreement, fraud, and misappropriation of trade secrets. At trial, a jury found that the April 1, 2002 letter was an enforceable agreement, that all conditions precedent to the agreement had been met, that CDI breached the agreement, and that AEI suffered damages of $879,168.89. The jury found that CDI did not commit fraud or misappropriate trade secrets.

## II. APPROVAL OF AEI AS AN EXCLUSIVE SUPPLIER WAS A CONDITION PRECEDENT TO THE CONTRACT

In its third issue, CDI contends the evidence is legally and factually insufficient to support the jury's determination that all conditions precedent had been met for AEI to enforce the agreement[2]. Our

consideration of this issue is controlled by Question No. 3, which was posited to the jury as follows:

> Have all conditions precedent to AEI's ability to enforce the agreement occurred?

> Conditions precedent to an obligation to perform are acts or events that occur after the contract is made and that must occur before there is a right to immediate performance and before there can be a breach of contractual duty. You are instructed that Lyondell's approval of AEI as the exclusive supplier of nontechnical services is a condition precedent to AEI's ability to enforce the agreement.

### A. The Standard of Review.

 The test for legal sufficiency, "must always be whether the evidence at trial would enable reasonable and fairminded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). "[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. *Id.* at 820. Although the reviewing court must consider evidence in the light most favorable to the judgment, and indulge every reasonable inference that would support it, if the evidence permits only one inference, neither jurors nor the reviewing court may disregard it. *Id.* at 822. We sustain a legal sufficiency challenge when the record discloses one of

**2.** In its first issue, CDI challenges the jury's finding that the April 1, 2002 letter was an enforceable agreement. Because issue three is dispositive of the appeal, we will not address CDI's first issue and assume without deciding that the letter constituted an enforceable agreement.

the following situations: (1) complete absence of evidence establishing a vital fact; (2) the court is barred from rules of law or of evidence from giving weight to the only evidence of a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. We review the record to determine if it contains any evidence that Lyondell approved AEI as the exclusive supplier of nontechnical services. *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000) (holding appellate court reviews sufficiency of the evidence against the charge actually given). If the evidence does not support the jury's finding that Lyondell approved AEI as the exclusive supplier of nontechnical services, AEI cannot enforce the agreement. *See NCS Mgmt. Corp. v. Sterling Collision Ctrs. Inc.,* 108 S.W.3d 534, 536 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

■ A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 283 (Tex.1998). A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. *Id.* If the condition is not fulfilled, the contract or obligation attached to the condition cannot be enforced. *NCS Mgt.,* 108 S.W.3d at 536.

## B. CDI and AEI agree that Lyondell must approve AEI as an exclusive supplier.

■ Both parties agreed that Lyondell's approval of AEI as the exclusive supplier of nontechnical services was a condition precedent to the April 1, 2002 agreement.[3] Darroh admitted at trial that the terms of the April 1, 2002 agreement required Lyondell to approve AEI as the exclusive provider of nontechnical employees.

The contract between CDI and Lyondell was admitted into evidence, and provides that "Neither Contractor nor its Subcontractor(s) shall subcontract or delegate any of the Work except to Subcontractors previously approved in writing by [Lyondell]." In an appendix to the contract, Lyondell expressly approved three staffing companies as "Contractor's Subcontractors." The contract further provides that Lyondell "shall have the right to object to any such Subcontractors at any time and in the event of such objection Contractor shall promptly replace the Subcontractor in question."

## C. The committee in charge of the vendor managed program told CDI that AEI could not be an exclusive supplier.

### 1. Dave Gordon, head of corporate staffing, and others said no to AEI as an exclusive supplier.

Maureen Valenza is the manager for capital projects and services accounts for Lyondell. Valenza was the lead negotiator for the vendor managed program and directed the commercial aspects of the proposal process. Dave Gordon was the technical lead on the bidding project because as the director of corporate staffing he had expertise in human resource matters. The other committee members were stakeholders in other aspects of the company, such as manufacturing, research and development, capital projects, legal, and different

---

**3.** AEI objected to Question No. 3, requesting the inclusion of the phrase, "upon request of CDI" in the instruction portion of the question. AEI took the position that CDI could not avail itself of a condition precedent if it did not undertake steps to ensure occurrence of the condition precedent. The trial court overruled AEI's objection. AEI has not raised this issue in its responsive brief.

segments of the organization that would require personnel from time to time. In his role as technical lead, Gordon had more authority on the committee than the other members. Valenza testified that after the committee reduced its list of possible general contractors, it began a clarification process in which the committee reviewed each staffing company's execution plan. Gordon stated that Lyondell required a network of temporary staffing suppliers to ensure immediate access to temporary employees. Lyondell wanted a broad network of suppliers capable of providing skilled employees who could pass background checks. Valenza further testified that Lyondell never agreed AEI could be the exclusive supplier for nontechnical services.

In the first round of negotiations, the committee informed CDI that it would not get the contract if AEI were designated as the exclusive supplier for nontechnical employees. After the contract was awarded, CDI asked to keep AEI as a supplier, and Lyondell agreed to permit CDI to use AEI, but instructed CDI to manage AEI in line with the contract as it managed other vendors. Gordon testified that Lyondell never agreed AEI would be the exclusive supplier of nontechnical services, nor did Lyondell agree that AEI would manage the nontechnical portions of the contract. Gordon further testified that Lyondell would have included that provision in its contract with CDI if Lyondell had agreed to permit AEI to be the exclusive supplier.

## 2. No evidence directly contradicts Gordon's fiat that AEI could not be an exclusive supplier.

AEI argues that Gordon was not the sole decision maker at Lyondell and that his personal opposition to AEI did not foreclose the possibility that Lyondell could approve AEI as an exclusive supplier. However, on this record, the vendor

managed program was driven by the human resources department. Gordon was the head of human resources for corporate staffing and the only human resources representative on the committee. Valenza testified that the other committee members deferred to him on this issue. Gordon explained that the human resources department at Lyondell was not pleased with AEI's performance. Gordon also testified that based on "analytical" responses from the remaining members of the committee, it was evident to him that the committee shared his view of AEI. But, even if some of the committee members did not share his view of AEI, our result would not change. For if some held these views, they never expressed them publicly. The record contains no evidence showing whether the other committee members would or would not have allowed AEI to be an exclusive supplier. On this, the record is completely silent and we can infer nothing. Thus, we are left with Gordon's and Valenza's descriptions of what Gordon and Gordon only-actually told CDI: it would not get the contract if AEI was an exclusive supplier. Valenza's testimony that she might have allowed AEI to be an exclusive supplier is an after-the-fact opinion never expressed to CDI certainly during the relevant time period. On this record, the only oral statements to CDI regarding the possibility of AEI being an exclusive supplier were the resoundingly negative ones from Gordon.

AEI contends that Lyondell "accepted AEI" as the exclusive supplier of nontechnical services. AEI recognizes that the contract designates three subcontractors, but contends nothing in the contract prohibited CDI from honoring the agreement and using AEI as its exclusive supplier. The jury, however, was not instructed that Lyondell's *acceptance* of AEI as *a supplier* was a condition precedent to the contract. The jury was instructed that Lyondell's

*approval* of AEI as *the exclusive supplier* was a condition precedent. We must review the evidence against the charge actually given. *See Osterberg,* 12 S.W.3d at 55. No evidence in the record, either circumstantial or direct, shows Lyondell ever agreed that AEI would be the exclusive supplier of nontechnical employees. In fact, CDI presented evidence conclusively establishing that Lyondell did not approve AEI as the exclusive supplier.

**D. AEI's best evidence to show Lyondell's approval of AEI as an exclusive supplier fails.**

**1. The lack of interest by one of the three subcontractors does not qualify as evidence that Lyondell knew and tacitly approved AEI.**

AEI further contends that although under the contract three subcontractors were permitted, Today's Staffing and CDI Professional Services were neither interested, nor capable of, providing nontechnical services to Lyondell. The evidence referenced by AEI shows that Today's Staffing provided temporary nontechnical employees to Lyondell through the vendor managed program after AEI pulled its employees out of the program. Dirk Dent, the head of Today's Staffing, testified that Today's Staffing was not particularly suited to Lyondell's needs. Today's Staffing primarily provided administrative staffing for insurance companies, banks, and financial institutions, whereas Lyondell needed administrative employees accustomed to a corporate environment. Richard Giannone, executive vice-president for CDI, testified that Today's Staffing and CDI Professional Services were included as a safety net for CDI.[4] AEI argues the jury could infer approval of AEI as the exclusive supplier because AEI was the only company that was willing to provide, or

capable of providing, administrative employees to Lyondell. This evidence does not show that Lyondell, tacitly or otherwise, approved AEI as an exclusive supplier. We would necessarily engage in impermissible inference stacking to reach that conclusion. *See generally Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 858 (Tex.1968). To the contrary, the evidence supports the conclusion that Lyondell did not want CDI to be subjected to an exclusive supplier, but wanted a broad network of suppliers.

**2. At most, AEI was approved as a primary, but not exclusive supplier.**

AEI further contends, "on this record, 'exclusive supplier' means that [AEI] would handle Lyondell's nontechnical staffing needs by placing its own personnel and by managing other subvendors under the umbrella of CDI's overall management of the Vendor Managed Project." As evidence of this intent, AEI references the testimony of Dick Darroh that use of the term "primary subcontrator" in the April 1, 2002 letter was the same as use of the term "exclusive supplier." As support for his assertion that the terms were synonymous, Darroh reviewed several clarification letters sent by CDI to Lyondell during the bidding process.

The first letter, exhibit 6, is a communication from CDI to Lyondell explaining it intends to use AEI as its "primary subcontractor" for nontechnical positions. The next letter, exhibit 8, is a request from Lyondell for clarification on several issues, including a question as to why if AEI is a subcontractor it is highlighted versus the other subcontractors. CDI responded in exhibit 9 by stating, "AEI is proposed as our prime subcontractor for clerical and nontechnical positions." The final letter

---

**4.** AEI does not reference any evidence showing if CDI Professional Services was capable

of providing, or willing to provide, nontechnical employees to Lyondell.

mentioned in Darroh's testimony and AEI's brief as evidence of Lyondell's approval of AEI as exclusive supplier is exhibit 66, in which Lyondell's representative asked, "With Contractor managing the technical side and AEI the clerical will there be a point of contact for Owner's managers or two?" CDI answered, "There will only be one point-of-contact for Owner's managers—STAR–1.[5] STAR–1 will be the prime contractor for this program; AEI is a primary subcontractor to STAR–1."

This evidence supports the conclusion that CDI attempted to negotiate "primary subcontractor" status for AEI. The evidence, however, does not support the jury's determination that Lyondell approved AEI as the exclusive supplier of nontechnical employees. CDI's designation of AEI as its primary subcontractor does not support the conclusion that Lyondell approved AEI as the exclusive supplier.

In general parlance, "primary" and "exclusive" are not synonymous.[6] AEI has presented no evidence that the terms are synonymous in this specific context or in the staffing industry as terms of art.

In its contract with CDI, Lyondell expressly designated three subcontractors to be used by CDI. The approved subcontractors were staffing companies that supplied nontechnical employees. Further, Lyondell required that it approve all subcontractors and reserved the right to object to the use of any subcontractor. The testimony of Valenza and Gordon was clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. AEI presented no evidence to contradict the express provisions of the contract or the unequivocal testimony of Gordon and Valenza. The jury could not ignore this undisputed evidence. The record, therefore, establishes the opposite of a vital fact, i.e., the condition precedent of Lyondell's approval was not met. *See City of Keller*, 168 S.W.3d at 810.

In sum, the evidence is legally insufficient to support the jury's answer to Question No. 3. We sustain CDI's third issue. Accordingly, the judgment of the trial court is reversed and judgment is rendered that AEI take nothing.

---

5. To maintain anonymity among the competing contractors, CDI used the name "STAR–1" during the initial phase of the bidding.

6. "Primary" is generally defined as, "first in rank or importance." "Exclusive" is generally defined as, "excluding or having power to exclude." WEBSTER'S INTERNATIONAL DICTIONARY 793, 1800 (3d ed.1993)