**THE LANDING COUNCIL OF CO–OWNERS, Appellant**

v.

**James B. DURHAM and Mary Lou Durham, Appellees.**

No. 14–06–00417–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 20, 2007.

George Jackson, Daniel R. Dutko, Houston, TX, for appellants.

Richard Petronella, Houston, TX, for appellees.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, The Landing Council of Co-Owners ("the Council"), appeals the portion of a judgment in favor of appellees, James B. Durham and Mary Lou Durham (collectively "the Durhams"), awarding exemplary damages on their Deceptive Trade Practices Act ("DTPA") claim. In seven issues, the Council contends the Durhams lacked "consumer" status, and the evidence is legally and factually sufficient to support the jury's findings that the Council committed a "false, misleading, or deceptive act or practice" and engaged in the conduct "knowingly." We conclude the evidence is legally insufficient to support the jury's finding that the Council knowingly committed a false, misleading, or deceptive act or practice. Accordingly, we modify the trial court's judgment to delete the award of exemplary damages and affirm as modified.

## I. BACKGROUND

The Council governs a condominium complex known as "The Landing" through a written "Condominium Declaration" ("the Declaration"). The Durhams own several units in the complex. In 1993, they purchased unit number 338, which is the subject of this suit. Before the purchase, the Durhams learned of a structural problem with the floor of this unit. The Council made repairs before the purchase was completed. In February 2003, the Durhams' long-time lessees vacated the unit. While preparing to relet, the Durhams discovered several large cracks in a concrete patch in the area of the floor that was repaired before they purchased the unit.

Under the Declaration, responsibilities for various aspects of maintenance are divided between the Council and a unit owner as follows, in pertinent part:

1. *By the Council.* The Council shall maintain, repair, and replace, as a common expense of the Council:

a. All portions of a Unit, except interior surfaces, contributing to the support of the Buildings, which portions shall include but not be limited to the outside walls of the Buildings and all fixtures on the exterior thereof, boundary walls of Units, floor and ceiling slabs, load-bearing columns, and load-bearing walls.

. . .

2. *By Each Co-Owner.* The responsibility of a Co-Owner shall be as follows:

a. To maintain, repair, and replace at his expense all portions of his Unit, except the portions to be maintained, repaired, and replaced as a common expense. . . .

According to the Durhams, under this provision, the Council was obligated to repair their floor. Mrs. Durham immediately notified the Council regarding the problem and requested the repair. She was informed that the Council's attorney would review the Declaration to determine the extent of its obligations. Over the following months, Mrs. Durham and her attorney repeatedly contacted the Council attempting to obtain a response to the Durhams' request. Many of these communications went unanswered. However, the Council effectively informed the Durhams the repair was their responsibility because there was no "structural" defect in their floor. According to the Council, it is obligated under the Declaration to re-

pair only "structural" problems, while the owner must remedy "cosmetic" defects. After a Council board representative and its maintenance supervisor viewed the floor, the Council decided the problem was cosmetic because it involved a "bad patch job."

Eventually, the Durhams sued the Council for breach of contract, negligence, breach of fiduciary duty, and DTPA violation. Subsequently, in an effort to resolve the matter, the Council offered to repair the floor, while still denying any obligation to do so. The record is unclear regarding the reason the Durhams did not accept this offer. Nevertheless, the floor remained unrepaired at the time of trial— almost three years after the Durhams discovered the problem.[1] The Durhams claimed they were unable to relet the unit absent the repair.

A jury found in the Durhams' favor on the three theories of liability submitted in the charge: breach of contract, breach of fiduciary duty, and DTPA violation. With respect to the DTPA claim, the jury found the Durhams were "a consumer," the Council committed "a false, misleading, or deceptive act or practice," and it engaged in this conduct "knowingly." The judgment reflects the Durhams elected recovery on the DTPA claim. The trial court entered judgment awarding the Durhams $42,500 in actual damages, representing loss of rental income, $20,000 in exemplary damages, attorney's fees, and interest.

## II. THE ISSUES AND OUR REVIEW

Preliminarily, we note the Council seeks reversal of only the exemplary-damages award.[2] The Durhams were awarded exemplary damages based on the jury's answer to Question 4 in the charge:

Did [the Council] engage in any such conduct knowingly?

"Knowingly" means actual awareness, at the time of the conduct, of the falsity, deception, or unfairness of the conduct in question. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

In answering this question, consider only the conduct that you have found was a producing cause of damages to the Durhams.

Answer: [yes]

The jury was instructed to answer Question 4 only if it affirmatively answered Question 2 (concerning consumer status) and Question 3 (inquiring as to a false, misleading, or deceptive act or practice). Thus, the conduct referenced in Question 4 is the false, misleading, or deceptive act or practice found in response to Question 3 as follows:

Did [the Council] engage in any false, misleading, or deceptive act or practice that the Durhams relied on to their detriment and that was a producing cause of damages to the Durhams?

"Producing cause" means an efficient, exciting, or contributing cause that, in

---

1. At one point, the Council's maintenance supervisor and a contractor arrived at the unit to purportedly perform the repair. However, Mrs. Durham did not permit them to proceed. She testified they did not plan to repair the floor to the extent necessary, and she was unable to contact her own engineer to supervise. Later, the Council offered to "repair the floor to the original design," including any structural defect, and allow oversight by the Durhams' consultant. It is unclear why the repair was not performed pursuant to this offer, although Mrs. Durham indicated "that wasn't because of me." Nevertheless, the floor remained unrepaired at the time of trial.

2. The Council has satisfied the portions of the judgment constituting actual damages and the Durhams attorney's fees through trial.

a natural sequence, produced the damages, if any. There may be more than one producing cause.

"False, misleading, or deceptive act or practice" means any of the following: Representing that the Declaration[ ] confers or involves rights that it did not have or involve.

Answer: [yes]

The Council presents seven issues on appeal. In its fourth and fifth issues, the Council directly challenges the exemplary-damages award, contending the evidence is legally and factually insufficient to support the jury's finding that the Council knowingly engaged in any false, misleading, or deceptive act or practice. In other issues, the Council challenges its liability on the underlying DTPA violation.[3] We conclude the Council's fourth issue is dispositive because there is no evidence the Council knowingly engaged in any false, misleading, or deceptive act or practice, as defined in the charge. However, our review of this issue necessarily encompasses consideration of the Council's contention that there is no evidence of *any* underlying false, misleading, or deceptive act or practice.

■■■ When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. There is "no evidence" or

legally insufficient evidence when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *See id.* at 810; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

## III. DISCUSSION

■ The definition of "false, misleading, or deceptive act or practice" in the jury charge included only one type of conduct: "Representing that the Declaration[ ] confers or involves rights that it did not have or involve." *See* TEX. BUS. & COM.CODE ANN. § 17.46(b)(12) (Vernon Supp.2007) (including in list of deceptive acts that may be actionable under the DTPA: "representing that an agreement confers or involves rights, remedies, or obligations, which it does not have or involve y(3)27)." Because the record does not reflect that either party objected to the jury charge and requested a different, or more expansive, definition, we review the legal sufficiency of the evidence in light of the definition submitted. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000); *CDI Eng'g Group, Inc. v. Admin. Exch., Inc.*, 222 S.W.3d 544, 548 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

---

**3.** Although the Council does not seek reversal of the actual damages, it essentially challenges the exemplary damages on the ground it is not liable for an underlying DTPA violation. Specifically, the Council contends the trial court erred by submitting jury questions on the Durhams' DTPA claim because they

were not "consumers" as a matter of law; alternatively, the evidence is insufficient to support the jury's finding that the Durhams were "consumers"; and the evidence is insufficient to support the jury's finding that the Council committed a DTPA violation.

Despite their limited communication before suit was filed, the Council effectively represented that the repair was the Durhams' responsibility because there was no structural defect.[4] The Council contends that its conduct constituted, at most, a breach of the Declaration—not a false, misleading, or deceptive act or practice actionable under the DTPA.[5] However, the Council presents inconsistent supporting arguments. Nevertheless, we agree there is no evidence the Council represented that the Declaration "confers or involves rights that it did not have or involve."

■ Primarily, the Council argues it did not commit a false, misleading or deceptive act or practice, as defined in the jury charge, because the dispute did not involve the terms of the Declaration. Rather, the Council contends the parties agreed the Council is obligated to repair only structural defects, but they disagreed on whether the Durhams' floor problem was structural. The evidence reflects both parties interpreted the Declaration as urged by the Council: it is obligated to repair structural defects while a unit owner is responsible for cosmetic repairs.[6] Viewed in the light most favorable to the jury's verdict, the evidence shows the Durhams' floor defect and proposed repair were indeed structural, as opposed to a "bad patch job" merely requiring repouring of concrete.[7] Accordingly, the Council misrepresented that there was no structural defect to be repaired. However, such an erroneous representation concerned the nature of the defect and the extent of the needed repair—not the terms of the Declaration. This erroneous representation simply did not constitute a representation the Declaration "confers or involves rights that it did not have or involve." *Cf. Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688, 694 (Tex.1979) (holding insurance agent's false statement to insured at time of purchase and renewal that policy covered vandalism was deceptive act under DTPA section 17.46(b)(12)).

■ Alternatively, the Council suggests this dispute *did* concern the terms of the

4. Although the Council was unresponsive to many of the Durhams' communications, it appears the Council made the following statements to the Durhams regarding its refusal to repair the floor: (1) when Mrs. Durham initially requested the repair, a board member generally suggested that one who purchases a home is obligated to make necessary repairs; (2) six weeks later, the Council's office manager informed Mrs. Durham generally that the Council board learned from its attorney the repair was the Durhams' responsibility; (3) a few months later, a Council board member told Mrs. Durham an engineering report supported its position; when Mrs. Durham replied that she also had an engineering report, the board member suggested she file suit if she felt so strongly about her position; and (4) after several more months, the Council's attorney advised the Durhams that the Council believed there was no structural defect.

5. The Council does not challenge the jury's finding that it breached the Declaration.

6. Mrs. Durham testified that a cosmetic repair, such as a crack in the concrete which does not affect the support of the unit, is the owner's responsibility. Moreover, several former or current board members, including witnesses presented by the Durhams, testified the Council is obligated to repair structural defects while the owner is required to remedy cosmetic problems.

7. According to the Durhams' engineer, the problem was caused, in essence, by poor workmanship with respect to installation of a beam in the subfloor that caused deflection. The engineer also described an issue with the concrete patch, but he indicated the issue was not merely cosmetic. Rather, the concrete was too heavy which contributed to the floor deflection. Further, a city building official and fire marshal, who viewed the floor, indicated the problem was structural and merely replacing the concrete patch would be insufficient.

Declaration. However, the Council argues that a mere misinterpretation of the terms of a contract does not rise to the level of a false, misleading, or deceptive act or practice actionable under the DTPA. Notwithstanding Mrs. Durham's testimony agreeing that a unit owner is responsible for cosmetic repairs, the Durhams suggest the Council misrepresented that it was required to effect only structural repairs to a floor. The Durhams note that the pertinent provision of the Declaration does not contain the word "structural" but requires the Council to repair "floor ... slabs," and the Durhams established the needed repair included the floor slab.

Regardless, even if the Council implicitly misrepresented that it is required to repair only "structural" defects to a floor, there was still no representation that the Declaration "confers or involves rights that it did not have or involve." A statement regarding the extent of the Council's obligations under the Declaration, even if erroneous, did not amount to a representation that the agreement conferred a *right* on the Council. *Cf. Leal v. Furniture Barn, Inc.*, 571 S.W.2d 864, 864–65 (Tex. 1978) (finding violation under section 17.46(b)(12) based on false representation by furniture seller of its *right* to retain funds paid by purchaser in layaway plan if contract were not completed, where no such provision existed); *Group Hosp. Servs., Inc. v. One and Two Brookriver Ctr.*, 704 S.W.2d 886, 888–89 (Tex.App.-Dallas 1986, no writ) (considering whether

landlord violated section 17.46(b)(12) under DTPA by representing that, pursuant to lease, it could bill tenant for certain utility costs and orally modify lease, although ultimately determining representations were not actionable). In addition, the Council did not misrepresent that the Durhams had any particular right under the Declaration. To the contrary, the essence of the Durhams' complaint is that the Council refused to acknowledge the Durhams had a particular right under the Declaration—the right to obtain repairs at the Council's expense.[8]

■ Finally, the Durhams outline various acts that allegedly demonstrated the Council's refusal to repair the floor involved a false, misleading, or deceptive act or practice: the Council repaired the same area before the Durhams purchased the unit; the Council obtained bids for the repair at issue shortly after the Durhams reported the problem; the Council's maintenance supervisor who initially inspected the floor indicated the Council should repair it, although he later expressed the opposite opinion; a member of the Council's maintenance advisory committee and a board member who viewed the defect advised the Council it should make the repair; despite the Council's initial refusal to make the repair, it told the Durhams they could not proceed absent Council approval; the Council did not respond to the Durhams' repeated communications and significantly delayed a commitment to make the

8. The Council cites cases recognizing that mere misinterpretation of a contract does not rise to the level of a DTPA violation. *See, e.g., Quitta v. Fossati*, 808 S.W.2d 636, 644 (Tex. App.-Corpus Christi 1991, writ denied); *Group Hosp. Servs., Inc.*, 704 S.W.2d at 888–89. We note the law is somewhat unsettled on the standard for deciding when an erroneous representation that an agreement confers or involves certain rights, remedies, or obligations is elevated from mere contract misin-

terpretation to a false, misleading, or deceptive act or practice actionable under the DTPA. *See W. Anderson Plaza v. Feyznia*, 876 S.W.2d 528, 532–33 (Tex.App.-Austin 1994, no writ) (explaining various standards applied by courts). Nevertheless, the authority cited by the Council is inapplicable because there was no erroneous assertion in the first place that the Declaration "confers or involves rights that it did not have or involve."

repair; the Council represented that a structural engineer would investigate, but this evaluation was performed more than a year after the Durhams' initial request; and the Council's decision was based on personal animosity toward the Durhams.

Viewed in the light most favorable to the verdict, some or all of these actions indicated the Council's refusal to repair the floor was disingenuous, it did not address the Durhams' complaint in a commendable manner, and arguably it engaged in deceptive conduct. However, none of these actions constituted a representation that the Declaration "confers or involves rights that it did not have or involve." Moreover, the definition of "false, misleading, or deceptive act or practice" submitted to the jury did not include any other conduct outlined in section 17.46(b) of the DTPA or "unconscionable" actions in general. *See* TEX. BUS. & COM.CODE ANN. § 17.46(b) (Vernon Supp.2007) (containing extensive and non-exclusive list of "false, misleading, or deceptive acts or practices" that may be actionable under DTPA); Tex. Bus. & Com. Code Ann. § 17.50(a)(3) (Vernon Supp. 2007) (providing that a consumer may maintain DTPA action when "any unconscionable action or course of action" is the producing cause of damages). Instead, the trial court submitted a very narrow definition of "false, misleading, or deceptive act or practice" that did not encompass the above-cited conduct. *See Osterberg,* 12 S.W.3d at 55; *CDI Eng'g Group, Inc.,* 222 S.W.3d at 548.

In sum, the evidence is legally insufficient to support the jury's finding that the Council knowingly committed a false, misleading, or deceptive act or practice. Therefore, we sustain the Council's fourth issue.

The jury's award of $20,000 in exemplary damages was predicated solely on the finding that the Council knowingly committed a false, misleading, or deceptive act or practice. Accordingly, we modify the trial court's judgment to delete the award of $20,000 in exemplary damages and affirm as modified.