Affirmed as Modified and Opinion filed November 20, 2007








Affirmed as Modified and Opinion filed November 20, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00417-CV

_______________

 

THE LANDING COUNCIL OF CO-OWNERS, Appellant

 

V.

 

 

JAMES B. DURHAM AND MARY LOU DURHAM, Appellees

                                                                                                                                               


On Appeal from County Civil Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 806,325

                                                                                                                                               


 

O P I N I O N








Appellant,
The Landing Council of Co-Owners (Athe Council@), appeals the portion of a judgment
in favor of appellees, James B. Durham and Mary Lou Durham (collectively Athe Durhams@), awarding exemplary damages on
their Deceptive Trade Practices Act  (ADTPA@) claim.  In seven issues, the
Council contends the Durhams lacked Aconsumer@ status, and the evidence is legally
and factually sufficient to support the jury=s findings that the Council committed
a Afalse, misleading, or deceptive act
or practice@ and engaged in the conduct Aknowingly.@  We conclude the evidence is legally
insufficient to support the jury=s finding that the Council knowingly
committed a false, misleading, or deceptive act or practice.  Accordingly, we
modify the trial court=s judgment to delete the award of exemplary damages and
affirm as modified.

I.  Background

The
Council governs a condominium complex known as AThe Landing@ through a written ACondominium Declaration@ (Athe Declaration@).  The Durhams own several units in
the complex.  In 1993, they purchased unit number 338, which is the subject of
this suit.  Before the purchase, the Durhams learned of a structural problem
with the floor of this unit.  The Council made repairs before the purchase was
completed.  In February 2003, the Durhams= long-time lessees vacated the unit. 
While preparing to relet, the Durhams discovered several large cracks in a
concrete patch in the area of the floor that was repaired before they purchased
the unit.

Under
the Declaration, responsibilities for various aspects of maintenance are
divided between the Council and a unit owner as follows, in pertinent part:

1.         By the Council.  The Council shall maintain, repair,
and replace, as a common expense of the Council:

a.    All portions of a Unit, except interior surfaces, contributing to
the support of the Buildings, which portions shall include but not be limited
to the outside walls of the Buildings and all fixtures on the exterior thereof,
boundary walls of Units, floor and ceiling slabs, load-bearing columns, and
load-bearing walls.

. . . 

2.       By Each Co-Owner.  The responsibility of a Co-Owner
shall be as follows:

a.    To maintain, repair, and replace at his expense all portions of
his Unit, except the portions to be maintained, repaired, and replaced as a
common expense. . . . 








According
to the Durhams, under this provision, the Council was obligated to repair their
floor.  Mrs. Durham immediately notified the Council regarding the problem and
requested the repair.  She was informed that the Council=s attorney would review the
Declaration to determine the extent of its obligations.  Over the following
months, Mrs. Durham and her attorney repeatedly contacted the Council
attempting to obtain a response to the Durhams= request.  Many of these
communications went unanswered.  However, the Council effectively informed the
Durhams the repair was their responsibility because there was no Astructural@ defect in their floor.  According to
the Council, it is obligated under the Declaration to repair only Astructural@ problems, while the owner must
remedy Acosmetic@ defects.  After a Council board
representative and its maintenance supervisor viewed the floor, the Council
decided the problem was cosmetic because it involved a Abad patch job.@

Eventually,
the Durhams sued the Council for breach of contract, negligence, breach of
fiduciary duty, and DTPA violation.  Subsequently, in an effort to resolve the
matter, the Council offered to repair the floor, while still denying any
obligation to do so.  The record is unclear regarding the reason the Durhams
did not accept this offer.  Nevertheless, the floor remained unrepaired at the
time of trialCalmost three years after the Durhams discovered the problem.[1] 
The Durhams claimed they were unable to relet the unit absent the repair.








A jury
found in the Durhams= favor on the three theories of liability submitted in the
charge: breach of contract, breach of fiduciary duty, and DTPA violation.  With
respect to the DTPA claim, the jury found the Durhams were Aa consumer,@ the Council committed Aa false, misleading, or deceptive act
or practice,@ and it engaged in this conduct Aknowingly.@  The judgment reflects the Durhams
elected recovery on the DTPA claim.  The trial court entered judgment awarding
the Durhams $42,500 in actual damages, representing loss of rental income,
$20,000 in exemplary damages, attorney=s fees, and interest.

II.  The Issues and Our Review

Preliminarily,
we note the Council seeks reversal of only the exemplary-damages award.[2] 
The Durhams were awarded exemplary damages based on the jury=s answer to Question 4 in the charge:

Did [the
Council] engage in any such conduct knowingly?

AKnowingly@ means actual awareness, at the time of the conduct,
of the falsity, deception, or unfairness of the conduct in question.  Actual
awareness may be inferred where objective manifestations indicate that a person
acted with actual awareness.

In answering this question, consider only the conduct that you have
found was a producing cause of damages to the Durhams.

Answer:       [yes]         

The jury
was instructed to answer Question 4 only if it affirmatively answered Question
2 (concerning consumer status) and Question 3 (inquiring as to a false,
misleading, or deceptive act or practice).  Thus, the conduct referenced in
Question 4 is the false, misleading, or deceptive act or practice found in
response to Question 3 as follows:

Did [the Council] engage in any false, misleading, or deceptive act or
practice that the Durhams relied on to their detriment and that was a producing
cause of damages to the Durhams?

AProducing cause@ means an efficient, exciting, or contributing cause
that, in a natural sequence, produced the damages, if any.  There may be more
than one producing cause.

AFalse,
misleading, or deceptive act or practice@
means any of the following:








Representing
that the Declaration[] confers or involves rights that it did not have or
involve.

Answer:       [yes]                   

The
Council presents seven issues on appeal.  In its fourth and fifth issues, the
Council directly challenges the exemplary-damages award, contending the
evidence is legally and factually insufficient to support the jury=s finding that the Council knowingly
engaged in any false, misleading, or deceptive act or practice.  In other
issues, the Council challenges its liability on the underlying DTPA violation.[3]
 We conclude the Council=s fourth issue is dispositive because there is no evidence
the Council knowingly engaged in any false, misleading, or deceptive act or
practice, as defined in the charge.  However, our review of this issue
necessarily encompasses consideration of the Council=s contention that there is no
evidence of any underlying false, misleading, or deceptive act or
practice.








When
examining a legal-sufficiency challenge, we review the evidence in the light
most favorable to the challenged finding and indulge every reasonable inference
that would support it.  City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005).  We credit favorable evidence if reasonable jurors could and
disregard contrary evidence unless reasonable jurors could not.  Id. at
827.  There is Ano evidence@ or legally insufficient evidence when (a) there is a
complete absence of evidence of a vital fact; (b) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (c) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (d) the evidence conclusively establishes the opposite of
the vital fact.  See id. at 810; Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).  The evidence is legally sufficient if it
would enable reasonable and fair‑minded people to reach the verdict under
review.  City of Keller, 168 S.W.3d at 827.

III.  Discussion

The
definition of  Afalse, misleading, or deceptive act or practice@ in the jury charge included only one
type of conduct: ARepresenting that the Declaration[] confers or involves
rights that it did not have or involve.@ See Tex. Bus. & Com. Code Ann. ' 17.46(b)(12) (Vernon Supp. 2007)
(including in list of deceptive acts that may be actionable under the DTPA: Arepresenting that an agreement
confers or involves rights, remedies, or obligations, which it does not have or
involveY).  Because the record does not
reflect that either party objected to the jury charge and requested a
different, or more expansive, definition, we review the legal sufficiency of
the evidence in light of the definition submitted.  See Osterberg v. Peca,
12 S.W.3d 31, 55 (Tex. 2000);  CDI Eng=g Group, Inc. v. Admin. Exch., Inc., 222 S.W.3d 544, 548  (Tex. App.CHouston [14th Dist.] 2007, pet.
denied).








Despite
their limited communication before suit was filed, the Council effectively
represented that the repair was the Durhams= responsibility because there was no
structural defect.[4]  The Council
contends that its conduct constituted, at most, a breach of the DeclarationCnot a false, misleading, or deceptive
act or practice actionable under the DTPA.[5] 
However, the Council presents inconsistent supporting arguments.  Nevertheless,
we agree there is no evidence the Council represented that the Declaration Aconfers or involves rights that it
did not have or involve.@

Primarily,
the Council argues it did not commit a false, misleading or deceptive act or
practice, as defined in the jury charge, because the dispute did not involve
the terms of the Declaration.  Rather, the Council contends the parties agreed
the Council is obligated to repair only structural defects, but they disagreed
on whether the Durhams= floor problem was structural.  The evidence reflects both
parties interpreted the Declaration as urged by the Council: it is obligated to
repair structural defects while a unit owner is responsible for cosmetic
repairs.[6]  Viewed in
the light most favorable to the jury=s verdict, the evidence shows the
Durhams= floor defect and proposed repair
were indeed structural, as opposed to a Abad patch job@ merely requiring repouring of
concrete.[7]  Accordingly,
the Council misrepresented that there was no structural defect to be repaired. 
However, such an erroneous representation concerned the nature of the defect
and the extent of the needed repairCnot the terms of the Declaration. 
This erroneous representation simply did not constitute a representation the
Declaration Aconfers or involves rights that it did not have or involve.@  Cf. Royal Globe Ins. Co. v. Bar
Consultants, Inc.,
577 S.W.2d 688, 694 (Tex. 1979) (holding insurance agent=s false statement to insured at time
of purchase and renewal that policy covered vandalism was deceptive act under
DTPA section 17.46(b)(12)). 








Alternatively,
the Council suggests this dispute did concern the terms of the
Declaration.  However, the Council argues that a mere misinterpretation of the
terms of a contract does not rise to the level of a false, misleading, or
deceptive act or practice actionable under the DTPA.  Notwithstanding Mrs.
Durham=s testimony agreeing that a unit
owner is responsible for cosmetic repairs, the Durhams suggest the Council
misrepresented that it was required to effect only structural repairs to a
floor.  The Durhams note that the pertinent provision of the Declaration does
not contain the word Astructural@ but requires the Council to repair Afloor . . . slabs,@ and the Durhams established the
needed repair included the floor slab.








Regardless,
even if the Council implicitly misrepresented that it is required to repair
only Astructural@ defects to a floor, there was still
no representation that the Declaration Aconfers or involves rights that it
did not have or involve.@  A statement regarding the extent of the Council=s obligations under the Declaration,
even if erroneous, did not amount to a representation that the agreement
conferred a right on the Council.  Cf. Leal v. Furniture Barn, Inc.,
571 S.W.2d 864, 864B65 (Tex. 1978) (finding violation under section 17.46(b)(12)
based on false representation by furniture seller of its right to retain
funds paid by purchaser in layaway plan if contract were not completed, where
no such provision existed);  Group Hosp. Servs., Inc. v. One and Two
Brookriver Ctr., 704 S.W.2d 886, 888B89 (Tex. App.CDallas 1986, no writ) (considering
whether landlord violated section 17.46(b)(12) under DTPA by representing that,
pursuant to lease, it could bill tenant for certain utility costs and orally
modify lease, although ultimately determining representations were not
actionable).  In addition, the Council did not misrepresent that the Durhams
had any particular right under the Declaration.  To the contrary, the essence
of the Durhams= complaint is that the Council refused to acknowledge the Durhams had a
particular right under the DeclarationCthe right to obtain repairs at the
Council=s expense.[8]

Finally,
the Durhams outline various acts that allegedly demonstrated the Council=s refusal to repair the floor
involved a false, misleading, or deceptive act or practice: the Council
repaired the same area before the Durhams purchased the unit; the Council
obtained bids for the repair at issue shortly after the Durhams reported the
problem; the Council=s maintenance supervisor who initially inspected the floor
indicated the Council should repair it, although he later expressed the
opposite opinion; a member of the Council=s maintenance advisory committee and
a board member who viewed the defect advised the Council it should make the
repair; despite the Council=s initial refusal to make the repair, it told the Durhams
they could not proceed absent Council approval; the Council did not respond to
the Durhams= repeated communications and significantly delayed a commitment to make
the repair; the Council represented that a structural engineer would
investigate, but this evaluation was performed more than a year after the
Durhams= initial request; and the Council=s decision was based on personal
animosity toward the Durhams.








Viewed
in the light most favorable to the verdict, some or all of these actions
indicated the Council=s refusal to repair the floor was disingenuous, it did not
address the Durhams= complaint in a commendable manner, and arguably it engaged
in deceptive conduct.  However, none of these actions constituted a
representation that the Declaration Aconfers or involves rights that it
did not have or involve.@  Moreover, the definition of Afalse, misleading, or deceptive act
or practice@ submitted to the jury did not include any other conduct outlined in
section 17.46(b) of the DTPA or Aunconscionable@ actions in general.  See Tex. Bus. & Com. Code Ann. ' 17.46(b) (Vernon Supp. 2007)
(containing extensive and non-exclusive list of Afalse, misleading, or deceptive acts
or practices@ that may be actionable under DTPA); Tex.
Bus. & Com. Code Ann. ' 17.50(a)(3) (Vernon Supp. 2007)
(providing that a consumer may maintain DTPA action when Aany unconscionable action or course
of action@ is the producing cause of damages).  Instead, the trial court submitted
a very narrow definition of Afalse, misleading, or deceptive act or practice@ that did not encompass the
above-cited conduct.  See Osterberg, 12 S.W.3d at 55; CDI Eng=g Group, Inc., 222 S.W.3d at 548.

In sum,
the evidence is legally insufficient to support the jury=s finding that the Council knowingly
committed a false, misleading, or deceptive act or practice.  Therefore, we
sustain the Council=s fourth issue.

The jury=s award of $20,000 in exemplary
damages was predicated solely on the finding that the Council knowingly
committed a false, misleading, or deceptive act or practice.  Accordingly, we
modify the trial court=s judgment to delete the award of $20,000 in exemplary
damages and affirm as modified.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Opinion filed
November 20, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.

 









[1]   At one point, the Council=s maintenance supervisor and a contractor arrived at
the unit to purportedly perform the repair.  However, Mrs. Durham did not
permit them to proceed. She testified  they did not plan to repair the floor to
the extent necessary, and she was unable to contact her own engineer to
supervise.  Later, the Council offered to Arepair
the floor to the original design,@
including any structural defect, and allow oversight by the Durhams= consultant.  It is unclear why the repair was not
performed pursuant to this offer, although Mrs. Durham indicated Athat wasn=t
because of me.@  Nevertheless, the floor remained unrepaired at the
time of trial.





[2]  The Council has satisfied the portions of the
judgment constituting actual damages and the Durhams attorney=s fees through trial.





[3]  Although the Council does not seek reversal of the
actual damages, it essentially challenges the exemplary damages on the ground
it is not liable for an underlying DTPA violation. Specifically, the Council
contends the trial court erred by submitting jury questions on the Durhams= DTPA claim because they were not Aconsumers@ as
a matter of law; alternatively, the evidence is insufficient to support the
jury=s finding that the Durhams were Aconsumers@;
and the evidence is insufficient to support the jury=s finding that the Council committed a DTPA violation.





[4]  Although the Council was unresponsive to many of the
Durhams= communications, it appears the Council made the
following statements to the Durhams regarding its refusal to repair the floor:
(1) when Mrs. Durham initially requested the repair, a board member generally
suggested that one who purchases a home is obligated to make necessary repairs;
(2) six weeks later, the Council=s
office manager informed Mrs. Durham generally that the Council board learned
from its attorney the repair was the Durhams=
responsibility; (3) a few months later, a Council board member told Mrs. Durham
an engineering report supported its position; when Mrs. Durham replied that she
also had an engineering report, the board member suggested she file suit if she
felt so strongly about her position; and (4) after several more months, the
Council=s attorney advised the Durhams that the Council
believed there was no structural defect.





[5]  The Council does not challenge the jury=s finding that it breached the Declaration.





[6]  Mrs. Durham testified that a cosmetic repair, such
as a crack in the concrete which does not affect the support of the unit, is
the owner=s responsibility.  Moreover, several former or current
board members, including witnesses presented by the Durhams, testified the
Council is obligated to repair structural defects while the owner is required
to remedy cosmetic problems.





[7]  According to the Durhams= engineer, the problem was caused, in essence, by poor
workmanship with respect to installation of a beam in the subfloor that caused
deflection.  The engineer also described an issue with the concrete patch, but
he indicated the issue was not merely cosmetic.  Rather, the concrete was too
heavy which contributed to the floor deflection.  Further, a city building
official and fire marshal, who viewed the floor, indicated the problem was structural
and merely replacing the concrete patch would be insufficient.





[8]  The Council cites cases recognizing that mere
misinterpretation of a contract does not rise to the level of a DTPA
violation.  See, e.g., Quitta v. Fossati, 808 S.W.2d 636, 644 (Tex. App.CCorpus Christi 1991, writ denied); Group Hosp.
Servs., Inc., 704 S.W.2d at 888B89. 
We note the law is somewhat unsettled on the standard for deciding when an
erroneous representation that an agreement confers or involves certain rights,
remedies, or obligations is elevated from mere contract misinterpretation to a
false, misleading, or deceptive act or practice actionable under the DTPA. 
See W. Anderson Plaza v. Feyznia, 876 S.W.2d 528, 532B33 (Tex. App.CAustin
1994, no writ) (explaining various standards applied by courts).  Nevertheless,
the authority cited by the Council is inapplicable because there was no
erroneous assertion in the first place that the Declaration Aconfers or involves rights that it did not have or involve.@