COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




CURTIS R. SELLERS, HARVEY
DEVELOPMENT CO., INC., and TONY
AGUILAR,


 Appellants,


v.



MARCELO GOMEZ, Individually and as
Purported Trustee, MICHAEL AINSA,
and AINSA HUTSON L.L.P., 


 Appellees.
§


 


§


 


§


 


§


 


§


 


 § 


 §


 §



No. 08-05-00308-CV



Appeal from the


120th Judicial District Court


of El Paso County, Texas 


(TC# 2004-1373) 


O P I N I O N


 Curtis Sellers and Harvey Development Co., both licensed real estate brokers, demanded
compensation from Marcelo Gomez for their services in the sale of the Park Cinema Theater in
El Paso. Mr. Gomez refused because there was no signed commission agreement. Mr. Sellers
and Harvey Development sued Mr. Gomez and his attorney, Michael Ainsa, for theft of services,
fraud, breach of fiduciary duty, and conspiracy. The trial court granted summary judgment in
favor of Mr. Gomez and Mr. Ainsa. The trial court also ordered Mr. Sellers, Harvey
Development, and their attorney, Tony Aguilar, to pay $80,000 in sanctions to Mr. Gomez and
Mr. Ainsa. Mr. Aguilar, Mr. Sellers, and Harvey Development present seven issues for review. 
In Issues One through Five, they challenge the trial court's grant of summary judgment. In Issues
Six and Seven, they challenge the trial court's award of sanctions. We affirm the trial court's
judgment.

 Appellants Mr. Sellers and Harvey Development are both licensed real estate brokers. 
Appellee Mr. Gomez owned the Park Cinema in El Paso. In the mid-2002, Mr. Sellers and
Harvey Development submitted an unsolicited offer to Mr. Gomez on behalf of Currey Adkins,
an IT supply company, to purchase the Park Cinema for $1,200,000. The written offer listed
Harvey Development as the principal broker and Mr. Sellers as the cooperating broker. Under
the terms of the offer, Mr. Sellers and Harvey Development would each receive a three-percent
real estate commission. Mr. Gomez did not accept the offer. 

 In December 2002, Mr. Sellers and Harvey Development sent Mr. Gomez another
unsolicited offer on behalf of Currey Adkins, this time to purchase the Park Cinema for
$1,650,000. Mr. Gomez did not accept the second offer.

 In April 2003, Mr. Gomez asked Miriam Lawrence, his cousin and an employee of
Harvey Development, to find out whether Currey Adkins would increase its second offer. 
Ms. Lawrence contacted Currey Adkins and learned that it was unwilling to go higher than
$1,650,000 at that time. On April 9, 2003, Will Harvey, the president of Harvey Development,
sent Ms. Lawrence a memo saying that $1,650,000 was Currey Adkins's top offer, and that
April 16, 2003 was the deadline for a response. According to Mr. Sellers's deposition,
Ms. Lawrence indicated that Mr. Sellers and Harvey Development would be compensated for
their services. However, when asked whether Ms. Lawrence had verbally promised to pay them,
Mr. Sellers testified that he could not remember. Mr. Gomez did not accept the third offer.

 On July 8, 2003, at Currey Adkins's request, Mr. Harvey sent a memo to Mr. Gomez. 
The memo stated that Currey Adkins was still interested in purchasing the Park Cinema, and that
Mr. Gomez should contact Mr. Harvey no later than July 21, 2003. Mr. Gomez did not respond
to this memo.

 On July 11, 2003, Mr. Gomez engaged Michael Ainsa, a partner at the law firm of Ainsa
Hutson, L.L.P., to represent him in connection with the possible sale of the Park Cinema. Prior
to that date, Mr. Ainsa had not been involved in the sale of the Park Cinema, and he had not
spoken to Mr. Sellers or Harvey Development about the sale. Mr. Ainsa testified that he had not
done any active legal work for Harvey Development since 2001, although his firm handled some
document-preparation work for the company on a case-by-case basis between February 2001 and
February 2004. Mr. Ainsa never did any legal work for Mr. Sellers. 

 On July 14, 2003, Mr. Harvey called Mr. Ainsa. Mr. Ainsa explained that he was
representing Mr. Gomez and would negotiate a contract with Currey Adkins for the sale of the
Park Cinema. Mr. Ainsa also told Mr. Harvey that Mr. Gomez did not intend to pay a real estate
commission to Mr. Sellers or Harvey Development. Mr. Ainsa explained that absent a written
agreement signed by Mr. Gomez, Mr. Gomez was not obligated to pay the commission. During
the conversation, Mr. Ainsa indicated that he was not representing Harvey Development in the
matter. However, Mr. Sellers testified that at some point, Mr. Ainsa indicated to him that
Mr. Sellers and Harvey Development would be compensated for their services.

 Mr. Gomez sold the Park Cinema to Currey Adkins in October 2003 for approximately
$1,900,000. No real estate commission was paid to any broker. On February 19, 2004, Harvey
Development's attorney, Tony Aguilar, sent a letter to Mr. Gomez concerning the sale of the
Park Cinema. Mr. Aguilar wrote that funds were still owed to Harvey Development and that he
had "found a way to file a lawsuit if necessary." At Mr. Gomez's request, Mr. Ainsa contacted
Mr. Aguilar and asked how he intended to file a lawsuit, since the Real Estate License Act
requires a signed written agreement for a real estate commission. See Tex.Occ.Code Ann.
§ 1101.806(c)(Vernon 2004). Mr. Aguilar replied that he had "found a way to get around the
Real Estate License Act."

 On March 26, 2004, Mr. Sellers and Harvey Development filed suit against Mr. Gomez
and Mr. Ainsa, alleging theft of services and fraud. (1) On December 14, 2004, Harvey
Development filed its first amended petition, adding Ainsa Hutson as a defendant and alleging
theft of services, fraud, conspiracy, breach of fiduciary duty, and failure to inform. Harvey
Development sought actual damages of $120,000, statutory damages of $1,000 each, exemplary
damages, and attorney's fees.

 In their answer, Mr. Gomez and Mr. Ainsa generally denied these claims, raised special
exceptions, and asserted an affirmative defense under the Texas Real Estate License Act. They
also raised a counterclaim alleging that the lawsuit was frivolous.

 On July 11, 2005, Mr. Gomez and Mr. Ainsa filed a motion for partial summary
judgment, requesting that the Court dispose of all of Harvey Development's claims, but not their
own counterclaims. In the motion, Mr. Gomez and Mr. Ainsa characterized the case as an action
to recover a real estate commission, disguised as an action for civil theft. They argued that the
Texas Real Estate License Act precluded Mr. Sellers from recovering a commission, regardless
of how the damages were characterized. Mr. Gomez and Mr. Ainsa argued that Mr. Sellers could
not recover under the Theft Liability Act, because Mr. Sellers could not establish that Mr. Gomez
agreed to pay for the services. Mr. Gomez and Mr. Ainsa also argued that Mr. Ainsa and Ainsa
Hutson could not be liable for breach of fiduciary duty or failure to inform because Mr. Ainsa
never represented Harvey Development in the Park Cinema sale.

 In its response to the motion, Harvey Development argued that Mr. Gomez could not use
the Real Estate License Act as a defense, because the Act's requirement of a writing applies only
to real estate commission, not all compensation. Compare Tex.Occ.Code Ann. § 1101.806(b)
(prohibiting a person from collecting "compensation for an act as a broker or salesperson" unless
the person holds a license or is an attorney) with Tex.Occ.Code Ann. § 1101.806(c)(prohibiting
the recovery of "a commission for the sale or purchase of real estate" in the absence of a signed
commission agreement). Harvey Development also argued that a written document is not
required under the Theft Liability Act, and that a jury could infer intent to avoid payment based
on Mr. Gomez's and Mr. Ainsa's actions. Finally, Harvey Development argued that Mr. Ainsa
and Ainsa Hutson owed a fiduciary duty to Harvey Development because Ainsa Hutson was
representing Harvey Development at the time of the sale. The trial court granted Mr. Gomez and
Mr. Ainsa's summary judgment motion.

 In August 2005, Mr. Gomez and Mr. Ainsa filed motions for sanctions against Harvey
Development, seeking attorney's fees for Harvey Development's frivolous lawsuit. Mr. Gomez
and Mr. Ainsa voluntarily dismissed their counterclaims without prejudice. At some point,
Harvey Development's attorney, Mr. Aguilar, was added to the motion for sanctions. Then
Harvey Development and Mr. Aguilar filed their own motion for sanctions, arguing that
Mr. Gomez and Mr. Ainsa's motions for sanctions were frivolous and seeking their own
attorney's fees. After a hearing on the motions, the trial court awarded sanctions to Mr. Gomez
and Mr. Ainsa in the amount of $80,000.

 In the order granting the motion for sanctions, the trial court limited its conclusions of
law to the actions for fraud and theft of services, and did not address Harvey Development's
other claims. In a nine-page order, the trial court made twenty-eight findings of fact and ten
conclusions of law. One findings of fact was that neither Mr. Gomez nor Mr. Ainsa made any
representations regarding compensation for the services provided by the plaintiffs. The trial
court also made findings of fact indicating that the plaintiffs knew prior to filing the lawsuit that
there were no actions by Mr. Gomez or Mr. Ainsa to intentionally and knowingly secure
performance of the brokerage services by deception, threat, or false token. In its conclusions of
law, the trial court concluded that none of the defendants violated the Theft Liability Act, and
that the plaintiffs had no basis in law or in fact to file a theft-of-services or fraud claim against
any of the defendants. The trial court found that Mr. Aguilar and Harvey Development violated
Chapter 10.001(3) of the Civil Practice & Remedies Code, because the theft and fraud claims in
the plaintiffs' petition lacked any evidentiary support.

Summary Judgment Motion

 In its first five issues, Harvey Development challenges the trial court's grant of summary
judgment.

 We review summary judgments de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005). In this case, Mr. Gomez and Mr. Ainsa filed a "traditional" motion for
summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure. When reviewing
a traditional summary judgment, we view the evidence in the light most favorable to the
nonmovant and resolve any doubts against the motion. Wal-Mart Stores, Inc. v. Spates, 186
S.W.3d 566, 568 (Tex. 2006). We must consider whether reasonable and fair-minded jurors
could come to different conclusions considering all the evidence presented. See id. When, as in
this case, the trial court's order does not specify the ground upon which it relied for its ruling, we
must affirm the judgment if any of the theories asserted in the motion is meritorious. Garcia v.
El Paso Ltd. P'ship, 203 S.W.3d 432, 435 (Tex.App.--El Paso 2006, no pet.).

 In Issue One, Harvey Development argues that the trial court erred in holding that the
Texas Real Estate License Act is an affirmative defense to a theft-of-services action under the
Theft Liability Act.

 The Real Estate License Act provides: "A person may not maintain an action in this state
to recover a commission for the sale or purchase of real estate unless the promise or agreement
on which the action is based, or a memorandum, is in writing and signed by the party against
whom the action is brought or by a person authorized by that party to sign the document." 
Tex.Occ.Code Ann. § 1101.806(c).

 In Trammell Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 635 (Tex. 1997), the Texas
Supreme Court held that this section of the Real Estate License Act precluded a real estate
broker's action for tortious interference to recover a commission. In that case, Hunt Products, a
prospective tenant, hired Patterson/McLaine Group, Inc. to locate rental space. Id. at 632. In
turn, Patterson/McLaine authorized William Harkinson, a real estate broker, to act as its
exclusive representative in locating the space. Id. Under his agreement with Patterson/McLaine,
Mr. Harkinson was supposed to obtain his commission from the owner of the rental space. 
Trammell Crow, 944 S.W.2d at 632. Mr. Harkinson negotiated a lease under which Hunt
Products would lease property owned by Trammell Crow. Id. Trammell Crow sent Mr.
Harkinson an unsigned commission agreement. Id. Mr. Harkinson redrafted the agreement,
signed it, and returned it to Trammell Crow. Id. A Trammell Crow employee told
Mr. Harkinson that a supervisor would sign the agreement, but no one signed it. Id. Meanwhile,
without Mr. Harkinson's knowledge, Patterson/McLaine entered into an agreement with
Trammell Crow, whereby Patterson/McLaine would pay Mr. Harkinson a vastly reduced
commission, and Trammell Crow would pay him nothing. Id. at 632-33. Harkinson sued
Trammell Crow and Patterson/McLaine for tortious interference with his oral commission
agreement, tortious interference with his exclusive-representation agreement, and civil
conspiracy. Id. at 633.

 The Texas Supreme Court noted that Mr. Harkinson did not have a signed commission
agreement as required by the Real Estate License Act. Id. The Court held that this barred his
action for tortious interference with the oral commission agreement. Id. at 635. The Court noted
that "Harkinson's claims, though couched in terms of a tort, are for the recovery of a real estate
commission." Id. at 633. Significantly, the Court barred Mr. Harkinson's tortious-interference
claim against Patterson/McLaine, a third party that never entered into any commission agreement
with Mr. Harkinson. Id. at 634. The Court also examined Mr. Harkinson's use of promissory
estoppel to attempt to recover the commission and stated, "As a licensed real estate broker,
Harkinson cannot act or forbear from acting in reliance on anything less than a signed written
commission agreement. When a broker does so and relies on a promise to sign a written
agreement that would satisfy section [1101.806(c)], (2) the broker inevitably does so at his or her
own peril." Trammell Crow, 944 S.W.2d at 636-37.

 The Supreme Court applied the same reasoning to Mr. Harkinson's claim of tortious
interference with his exclusive-representation agreement, and held that this claim was barred as
well. The Court noted: "As we read Harkinson's claim, he asserts that had [Trammell Crow] not
interfered with his exclusive representation agreement, he would have been paid his commission
as the exclusive representative negotiating a lease for Hunt Products . . . . The loss of the
opportunity to negotiate exclusively on behalf of Hunt Products in this instance translates only
into the loss of the expectancy of receiving a commission at the end of the lease negotiations." 
Id. at 634. In other words, because Mr. Harkinson could not prove up damages apart from the
lost commission, he was barred from any cause of action that sought the commission as damages. 
Even if Mr. Harkinson had proven a breach of his exclusive-representation agreement, his claim
would still have been barred as "illusory and wholly derivative of his unenforceable oral
commission agreement." Id.

 In this case, Harvey Development argues that the holding in Trammell Crow applies only
to common law causes of action, rather than statutory causes of action. Harvey Development
points to language in the opinion stating that Mr. Harkinson's claims "are barred by section
[1101.806(c)] unless saved by some other law." Trammell Crow, 944 S.W.2d at 634. However,
following this statement, the Court goes on to discuss the "other law" that, according to
Mr. Harkinson, preserves his claim. Trammell Crow, 944 S.W.2d at 634-35. In particular, the
Court discusses Clements v. Withers, 437 S.W.2d 818 (Tex. 1969), a case that interpreted the
same section of the Real Estate License Act at issue in Trammell Crow, 944 S.W.2d at 634-35. 
This indicates that the "other law" that can save this kind of action is case law interpreting the
Real Estate License Act itself. Nowhere in the Trammell Crow opinion does the Court
distinguish between statutory and common law causes of action. What is clear from the opinion,
however, is that "a broker may not recover a commission unless the commission agreement is in
writing and signed by the party to be charged." Id. at 635.

 Much like Mr. Harkinson, Harvey Development has attempted to couch a claim for
recovery of a commission in terms of tort law. The $120,000 that Harvey Development seeks is
nearly equal to the $114,000 it would have received if the property had been sold at $1,900,000
and Harvey Development had received a six-percent commission. The following excerpt from
Mr. Harvey's deposition reveals how Harvey Development calculated this figure:

 Q: Well, what basis do you have for picking 120, then?


 A: We felt it was a reasonable figure.


 Q: So it was pulled out of the air?


 A: It approximates a real estate commission, or what a real estate commission
would have been, had one been charged.


 Q: So, in fact, that is basically what you're using as a frame of reference, a
real estate commission?


 A: You've got to start someplace.


 Q: Well, is that what you're using? I'm asking you the question.


 A: Yes.


Although Harvey Development tries to frame its action as one for compensation rather than
commission, it does not define the scope of the term "compensation" or explain how it was
calculated, apart from substituting what the commission would have been. Nor does Harvey
Development explain how its actions against Mr. Ainsa and Ainsa Hutson for breach of fiduciary
duty, failure to inform, fraud, and conspiracy relate to any damages other than the lost
commission.

 This Court has noted that the purpose underlying the Real Estate License Act's
requirement of a signed commission agreement is "to prevent fraud arising from parol testimony
as to the terms and conditions of such contracts." American Garment Props., Inc. v. CB Richard
Ellis-El Paso, L.L.C., 155 S.W.3d 431, 436 (Tex.App.--El Paso 2004, no pet.), quoting Denman
v. Hall, 144 Tex. 633, 636, 193 S.W.2d 515, 516 (1946). In the instant case, Harvey
Development relies strictly on the alleged statements of Ms. Lawrence and Mr. Ainsa indicating
that Appellants would be compensated for their services. Significantly, they do not rely on the
unsigned commission agreements from 2002, as this would undermine their argument that they
are seeking compensation other than commission. Allowing them to proceed would essentially
allow them to construct an enforceable commission agreement out of an alleged oral agreement,
directly contrary to the purpose underlying the requirement of a signed commission agreement.

 Under the facts of this case, where Harvey Development has admitted that the damages it
seeks approximate a real estate commission, we hold that Harvey Development's actions are
barred by the Real Estate License Act's requirement of a signed commission agreement. This
includes not only the actions seeking compensation for services performed, but also the claims of
breach of fiduciary duty, failure to inform, fraud, and conspiracy. Issue One is overruled, and we
decline to address Issues Two through Five.

Sanctions

 In their final two issues, Mr. Aguilar and Harvey Development challenge the trial court's
award of sanctions, arguing that the sanctions are excessive and that there was insufficient
evidence to support the award.

 We review a trial court's award of sanctions under an abuse-of-discretion standard. 
Finlay v. Olive, 77 S.W.3d 520, 524 (Tex.App.--Houston [1st Dist.] 2002, no pet.). A trial court
abuses its discretion in imposing sanctions if the order is based on an erroneous view of the law
or a clearly erroneous view of the evidence. Monroe v. Grider, 884 S.W.2d 811, 816 (Tex.App.--Dallas 1994, writ denied). As such, an appellate court will view the conflicting evidence in the
light most favorable to the trial court's ruling and will draw all reasonable inferences in favor of
the trial court's judgment. Herring v. Welborn, 27 S.W.3d 132, 143 (Tex.App.--San Antonio
2000, pet. denied).

 The Civil Practice and Remedies Code permits a trial court to grant sanctions against an
attorney and the attorney's client if the attorney signs a pleading that makes allegations without
evidentiary support. Tex.Civ.Prac.&Rem.Code Ann. §§ 10.001(3), 10.004(a)(Vernon 2002). 
The sanctions "must be limited to what is sufficient to deter repetition of the conduct or
comparable conduct by others similarly situated." Tex.Civ.Prac.&Rem.Code Ann.
§ 10.004(b).

 In this case, the trial court offered five pages of findings of fact, indicating that
Mr. Gomez did not intentionally or knowingly secure Harvey Development's services by deceit,
and that Mr. Aguilar filed suit knowing that there was no evidence of this necessary element of
theft of services and fraud. The trial court correctly applied the Theft Liability Act, which
incorporates the definition of "theft" from the Texas Penal Code. See
Tex.Civ.Prac.&Rem.Code Ann. § 134.002(2)(Vernon 2005). A person commits theft of
service under Section 31.04 of the Penal Code if, with intent to avoid payment for service he
knows is provided only for compensation, he intentionally and knowingly secures performance of
the service by deception, threat, or false token; or he intentionally and knowingly secures the
performance of the service by agreeing to provide compensation and, after the service is
rendered, fails to make payment after receiving notice demanding payment. Tex.Penal Code
Ann. § 31.04(a)(1), (4)(Vernon Supp. 2007). The trial court correctly applied this definition in
concluding that Harvey Development had no basis in law or fact for filing suit against
Mr. Gomez and Mr. Ainsa for theft or fraud. Therefore, we hold that the trial court did not abuse
its discretion in awarding sanctions to Mr. Gomez and Mr. Ainsa.

 Mr. Aguilar and Harvey Development also argue that the sanctions were excessive and
that the trial court failed to consider lesser sanctions. However, the three cases that Harvey
Development cites for the proposition that lesser sanctions must be considered deal with
discovery sanctions, unlike the instant case. See Cire v. Cummings, 134 S.W.3d 835, 839 (Tex.
2004); Spohn Hosp. v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003); TransAmerican Natural Gas
Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991). Mr. Ainsa testified that he and Mr. Gomez
were charged approximately $92,000 in attorney's fees for the case, but he stipulated that
$10,000 to $11,000 could be deducted from that amount, since Appellees dropped the part of
their motion for sanctions that applied to Appellants' claim for breach of fiduciary duty. Because
there were no lesser sanctions the trial court could have considered, we hold that the trial court
did not abuse its discretion by awarding sanctions in the amount of $80,000.

 In their final issue, Mr. Aguilar and Harvey Development argue that the trial court's
award of sanctions was not supported by evidence, because there was no proof that the attorney's
fees were reasonable and necessary. But proof of the necessity or reasonableness or attorney's
fees is not required when the fees are assessed as sanctions. Gorman v. Gorman, 966 S.W.2d
858, 868-69 (Tex.App.--Houston [1st Dist.] 1998, pet. denied). Rather, the amount of attorney's
fees awarded as sanctions is within the sound discretion of the trial court. Id. at 869. Issues Six
and Seven are overruled.

 We affirm the trial court's judgment.



July 31, 2008

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.)(Sitting by Assignment)
1. Appellants Mr. Sellers and Harvey Development Co. will subsequently be referred to as
"Harvey Development."
2. The Court in Trammell Crow cites the old version of the Real Estate License Act, before
the Act's repeal and recodification in the Occupations Code. Although the current section has
undergone cosmetic changes, it is materially identical to the old version. See
Tex.Rev.Civ.Stat.Ann. art. 6573a, § 20(b)(Vernon Supp. 1997)(repealed 2003)(current version
at Tex.Occ.Code Ann. § 1101.806(c)(Vernon 2004).